Shackleford's Adm'r v. Lou. & Nash. R. R. Co.

CASE 6—PETITION ORDINARY—APRIL 8.

# Shackleford's Adm'r v. Lou. & Nash. R. R. Co.

APPEAL FROM LARUE CIRCUIT COURT.

1. THE UNUSUAL SPEED OF A TRAIN is not neglect as to one who voluntarily places himself upon the track where he has no right to be. In such cases the company is not liable, unless those in charge of the train, after discovering the danger, could, by the exercise of proper care, have avoided the injury.

2. THE FAILURE OF TRAINS TO GIVE THE CUSTOMARY SIGNALS in approaching public crossings is not negligence as to trespassers who may be crossing or using the track elsewhere.

3. CASE ADJUDGED.—A woman living at a section-house belonging to appellee, as a servant of the occupant, who was a section boss of the company, was, while crossing the railroad track to reach the milk yard belonging to the house, struck by a passing train and killed. The train was running at the rate of twenty-five or thirty miles per hour. No signal was given of its approach to a public crossing a mile distant, or to a neighborhood crossing near by, or to the section-house. Held—That the woman was a trespasser, and that there was no negligence upon the part of the company as to her.

D. H. SMITH FOR APPELLANT.

1. The unusual speed of the train and the failure to give any signal of its approach constituted willful neglect. (Sherman & Redfield on Negligence, sections 481, 482; 12 Bush, 41; L. & N. R. R. Co. v. Howard's Adm'r, 6 Ky. Law Rep., 165; L. & N. R. R. Co. v. Trent, by &c., 6 Ky. Law Rep., 95; L. & N. R. R. Co. v. Wallace's Adm'r, page 302.)

2. The deceased was not a trespasser, as the right of the inmates of the section-house to use the track at the point where she was crossing had been recognized by the company for years.

3. If willful neglect be shown, contributory neglect on the part of the deceased can not be considered. (L. & N. R. R. Co. v. McCoy, 5 Ky. Law Rep., 397.)

4. It was for the jury to say whether willful neglect had been proved, and the peremptory instruction was improper. (Sherman & Redfield on Negligence, section 11; L. C. & L. R. R. Co. v. Mayberry, 7 Bush, 237; 4 Ky. Law Rep., 810; L. & N. R. R. Co. v. Brooks 5 Ky. Law Rep., 751; Thompson v. Thompson, 17 B. M., 22; Buford v. L. & N. R. R. Co., 5 Ky. Law Rep., 264; L. & N. R. R. Co. v. Howard, 6 Ky. Law Rep., 164; R. & L. Turnpike Co. v. Foley, 5 Ky. Law Rep., 425.)

WM. LINDSAY FOR APPELLEE.

1. The death resulted directly from the act of the decedent in stepping upon the track so close to the engine that no human agency could possibly save her.

2. Rules regulating the blowing of whistles and ringing of bells are not for the protection of persons using the track at points where the public have no right to the use. (L. & N. R. R. Co. v. Howard's Adm'r, 6 Ky. Law Rep., 163.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

In this action by the administrator of Elizabeth Shackleford against the appellee, the Louisville & Nashville Railroad Company, to recover damages for the killing of the intestate, by being run over by one of its trains, through the alleged willful neglect of those in charge of it, the lower court, at the close of the appellant's testimony, peremptorily instructed the jury to find for the appellee.

This was improper if the evidence tended in any degree to support a right of recovery. If, however, there was an entire absence of negligence upon the part of the appellee, then the court's action can not be disturbed.

It appears from the evidence that the deceased was not in the employ of the company, but was living at a section-house belonging to it, doing gen-

eral housework for the occupant, who was a section boss of the appellee, and that she had been so engaged for about a month. The house was situated fourteen and a half feet from the track of the railroad, with a porch extending from it still nearer, and quite close to the track. Just south of the porch, and obstructing, to some extent, the view from it southward along the railroad, were a well-house and a small work-house. In the same direction, and two hundred yards from the section-house, at a curve in the railroad, is a crossing, which was used by the neighbors in going to church, and in hauling freight to be loaded into empty cars, which were sometimes left upon a switch, which was near the section-house. The passway was not, however, a public one, and the owner of the land was threatening to sue those passing over it for trespass. Still further south, and about a mile from this crossing, was a county road. A short distance north of the section-house was a bridge over Rolling Fork river, while across the track from the house were some outbuildings belonging to it, and the milk yard. There was no town or station at this point upon the road. The testimony shows that sometimes the trains would give a signal when nearing the section-house, while at other times they would not do so.

At about seven o'clock on the morning of October 7, 1883, the deceased came out of the kitchen door of the section-house onto the porch, wearing a sun bonnet, and carrying a bucket in each hand. When she did so, the engine of the appellee's train—which was not a regular, but a "wild" one, and transport-

ing a circus—was but twenty or twenty-five steps from her, and running at the rate of from twenty-five to thirty miles *per* hour. She looked neither to the right nor the left, but upon emerging from the door started immediately to cross the track diagonally and toward the milk yard. This placed her back rather toward the train, which was coming from the south, and but a mile or two behind another, which had just passed, and the sound of which could still be heard at the section-house. The unfortunate, and as the testimony discloses, worthy woman, was struck by the locomotive and killed.

It is certain that those in charge of the train after discovering her danger, if indeed they knew of it at all until she was struck by the engine, could not by the exercise of the greatest care have avoided the injury.

It does not appear that they even knew of her presence until the moment of the accident; and if they had seen her when she stepped from the kitchen door onto the porch, and had then known that she was about to go upon the track, they could not have saved her.

As a matter of law, however, the appellee had the exclusive right to the use of the road at that point; it was not bound to anticipate the presence there of the deceased; and it could only be held liable if those in charge of the train, after discovering her danger, could, by the exercise of proper care, have avoided the injury.

The testimony of the appellant shows that persons

at the section-house heard the coming train when a mile distant; and that when the deceased was six feet from the kitchen door she could see from four hundred and sixty to five hundred feet southward along the track, and still further as she approached it.

It is urged, however, that the train was running at an unusual rate of speed; that it sounded no whistle at the county road crossing, and gave no alarm at the neighborhood crossing two hundred yards distant, or as it approached the house; and if it had done so, the deceased would have been warned, and her life saved.

She was not injured, however, at a place where the public had a right to be, but at a point upon the track where the right of the company was exclusive, and where a reckless use would not necessarily endanger the lives of persons as would be the case in a town or upon a public thoroughfare. The speed of the train under such circumstances can not constitute neglect as to one who voluntarily places himself upon the track, and where he has no right to be, and thus carelessly exposes himself to injury.

Railroad trains must give the customary signals at public places or public crossings. The failure to do so is negligence; but this is required for the safety of passengers, trainmen and the public using, and who have the right to use, the track at such public ways, and not for the purpose of protecting those who, as trespassers, may be crossing or using the track elsewhere.

The instances are numberless upon every railroad of persons living along it, and having to and being

in the habit of crossing the track to pass from the dwelling to the outbuildings or *vice versa;* and to require the companies in all such cases to signal the approach of their trains, and to presume and guard against the presence of persons upon the track, would not only be unreasonable, but detrimental to public travel.

Whether any negligence whatever upon the part of the appellee had been shown was a question for the determination of the lower court; and, in our opinion, the evidence not only failed to establish it, but evidences such contributory neglect upon the part of the deceased, that but for it the unfortunate accident would not have happened.

Judgment affirmed.