L. & N. Ry. Co. v. Redmon's Admx.

CASE 43.—ACTION BY J. R. REDMON'S ADMINISTRATRIX AGAINST THE LOUISVILLE & NASHVILLE RY. CO. FOR DAMAGES FOR THE DEATH OF PLAINTIFF'S DECEDENT.—March 20.

## L. & N. R. R. Co. v. Redmon's Admx.

Appeal from Nelson Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Judgment    for    plaintiff.    Defendant    appeals. Reversed.

| 122 | 385 |
| 123 | 792 |
| e123 | 793 |
| f124 | 493 |
| 122 | 385 |
| 125 | 57 |
| 125 | 58 |

1. Railroads—Personal Injuries—Trespassers—Evidence—In an action against a raiload company for a death occurring on what it claimed as its right of way, the introduction of title papers by it was not necessary; it appearing that such right of way had been inclosed for more than 45 years.
2. Same—It was not material that all the fences separating such right of way from the lands of others were not built by the company.

vol. 122—25.

L. & N. Ry. Co. v. Redmon's Admx.

3. Same—Use of Right of Way—License—Where the right of way on which plaintiff's decedent was killed was not on or parallel to an adjoining street, but was entirely enclosed to prevent its use by the public, its use by the public in sometimes passing that way did not amount to a license.

4. Same—Care Required as to Trespassers—There could be no recovery for the death of a trespasser on a railway right of way unless the trainmen, after discovering his danger, could by the exercise of ordinary care have prevented the accident.

5. Same—Though trainmen saw plaintiff's decedent walking by the side of the track ahead of the train, they were not required to anticipate that he would put himself in danger by getting on the track in plain view of the approaching train, but they might assume that he knew of its approach.

6. Same—Rate of Speed—Municipal Ordinance—Violation of a speed ordinance was not negligence available to plaintiff.

7. Same—Failure to Signal—Failure to give customary signals on approaching a crossing was not negligence available in behalf of plaintiff suing for death of a trespasser killed on the right of way.

8. Same—Contributory Negligence—Evidence—Evidence that plaintiff's decedent was postmaster and should have known the schedule time of regular trains, but walked along the right of way ahead of one of such trains and suddenly stopped on the track in front of it, showed contributory negligence.

JOHN S. KELLY for appellant.

## POINTS AND AUTHORITIES

1. Appellee's intestate was a trespasser in going on appellant's track within its enclosure, where he was injured.

2. Simple acquiescence by a railroad company in the use of its tracks, even in a city, does not amount to a license, confers no authority or right so to use them, and one so using the tracks is a trespasser—a wrong-doer. (Brown's Admr. v. L. & N. R. Co., 97 Ky., 230.)

3. The petition alleges that appellee's intestate was "upon or near the public road or street of the city of New Haven" at the time he was injured. This is equivalent to the averment that he was not upon the road or street crossing, but near it, and therefore a trespasser. (Davis' Admr. v. C. & O. R. Co., 25 Ky. Law Rep. 346; Embry v. L. & N. R. Co., 18 Ky. Law Rep., 436.)

L. & N. Ry. Co. v. Redmon's Admx.

4. The evidence shows that intestate was not upon, or using any road or street crossing the railroad, and he was, therefore, a trespasser.

5. Apellee can not complain of the failure of signals nor the speed of the train, as her intestate was a trespasser, and not using either a street, road, or crossing. (Davis' Admr. v. C. & O. R. Co., 25 Ky. Law Rep., 346; Shackleford's Admr. v. L. & N. R. Co., 84 Ky., 43; C. & O. R. Co. v. Perkins, 20 Ky. Law Rep., 610.)

6. The only duty that appellant owed intestate was to avoid injuring him after his peril was discovered, which was not possible.

7. The court erred in refusing to instruct the jury that it was the duty of intestate to use his senses of sight and hearing before going on the track. (C. & O. R. Co. v. Perkins, 20 Ky. Law Rep., 613; Lou., Cin. & Lex. R. Co. v. Goetz's Admr., 79 Ky., 449.)

8. Although the place where intestate was injured was within the town of New Haven, it was not where persons were licensed to go, nor where persons congregated or human beings had a right to travel, nor where they were reasonably to be expected, and the rule as to the care required for the protection of trespassers was not changed, and instructions given were therefore erroneous. (John's Admr., v. L. & N. R. Co., 10 Ky. Law Rep., 759; L. & N. R. Co. v. Howard's Admr., 82 Ky., 218; L. & N. R. Co., v. Vittitoe's Admr., 19 Ky. Law Rep., 612.)

9. Intestate recklessly exposed himself by stepping in front of the train, and no recovery can be had. A peremptory instruction for defendant should have been given. (Ill. Cent. R. Co. v. Dick, 91 Ky., 441-3.)

BENJAMIN D. WARFIELD for appellant.

POINTS AND AUTHORITIES DISCUSSED.

1. The petition did not state a cause of action. (Embry v. L. & N. R. Co., 18 Ky. Law Rep., 434; Newport News, &c., Co., v. Deuser, 97 Ky., 92.

2. The trial court erred in permitting testimony as to the use made of the public crossing near which the accident happened. The accident having happened away from the crossing, and within the private enclosure of appellant, it did not owe decedent the duty it would have owed him if he had been on a public crossing. (L. & N. R. Co. v. Logsden's Admr., 26 Ky. Law Rep. on p. 461; Newport News, &c., Co. v. Deuser, supra; Brown's Admr. v. L. & N. R. Co., 97 Ky., 228; Dorsey's Admr. v. L. & N.

L. & N.˙Ry. Co. v. Redmon's Admx.

R. Co., 26 Ky. Law R., 233; L. & N. R. Co. v. Vittitoe's Admr., 19 Ky. Law R., 612, 614, and cases there cited.)

3. The court erred in permitting testimony to go to the jury as to the use made by the public, to walk upon, of appellant's right of way between the cattle-guard and the bridge. Hoskin's Admx. v. L. & N. R. Co., 17 Ky. Law R., 78; France's Admr. v. L. & N. R. Co., 15 Ky. Law Rep., 244; Brown's Admr. v. L. & N. R. Co., supra; Gregory v. L. & N. Co., 25 Ky. Law Rep., 1986-88; C. & O. Ry. Co. v. See's Admr., Ib., 1995; Goodman's Admr. v. L. & N. R. Co., Ib., on p. 1089.)

4. This case comes within the rule announced in L. & N. R. Co., v. Wathen, 22 Ky. Law Rep., 82: "The defendant's right should not be guessed away for one upon whom the burden rests to establish a cause of action against it."

5. Decedent's negligence was the proximate cause of the accident, and the doctrine causa proxima, non remota spectatur, applies. (Setter's Admr. v. City of Maysville, 114 Ky., 60; Shields v. L. & N. R. Co., 97 Ky., 103; L. & N. R. Co. v. Webb, 99 Ky., 332; Berry v. L. & N. R. Co., 109 Ky., 727-730.)

6. The court erred in permitting evidence to go to the jury as to the requirements of the speed ordinance of the town of New Haven. (L. &· N. R. Co. v. Dalton, 102 Ky., 290-294, and cases there cited; Southern Ry. Co. v. Wood, 21 Ky. Law Rep., 575; Ward's Admr. v. I. C. R. Co., 22 Ky. Law Rep., 191.)

7. The court erred in permitting other incompetent testimony to go to the jury.

8. The court erred in excluding testimony as to the competency of engineer Riley. (Crane Co. v. Columbus Construction Co., 73 Fed., on p. 989; McGuerty v. Hale, 36 N. E., 682; Lewis v. Embry, 66 N. W., 569; Clark v.· Co., 111 Ky., on p. 461.)

9. The court erred in refusing peremptorily to instruct the jury to find for appellant.

10. The instructions given by the court were vitally erroneous in a number of particulars. (2 Thompson's Commentaries, section 1796; L. & N. R. Co. v. McCombs, 21 Ky. Law Rep., 1238; L. & N. R. Co. v. Harrod, 115 Ky., 877.)

11. The court·erred in refusing to instruct the jury as requested by appellant. (I. C. R. Co. v. Jackson, 23 Ky. Law Rep., 1406.)

NAT. W. HALSTEAD, counsel for appellee, and MORGAN YOWELL, F. E. DAUGHERTY and GREENE & VANWINKLE of counsel.

1. Appellant company by its rules fixed the maximum limit of

L. & N. Ry. Co. v. Redmon's Admx.

safety to the speed at which said train should be run within the corporate limits of said city of New Haven, at six miles per hour. Such was the rule requiring those in charge of said train to run, not exceeding that rate of speed, at the time of the destruction of the life of J. R. Redmon by said train.

2. Appellant's agents, the servants in charge of said train, were guilty of gross negligence in the operation and management of said train by running said train into said city of New Haven and in violating the rule of appellant company in running said train within the corporate limits of said city and at the time it struck and killed said J. R. Redmon at the dangerous rate of speed of from fifteen to twenty miles per hour.

3. Appellant was guilty of gross negligence in running its said train in and through the city from said bridge to said crossing and in approaching said crossing by not giving such signals and warnings of the train's approach as were reasonably necessary under the circumstances to warn persons of said train's approach, and of its approach to said crossing, and by such negligence causing the death of deceased, J. R. Redmon.

4. Appellant was guilty of gross negligence in the management of said train and which caused the death of deceased, J. R. Redmon, in not giving the distress signals or danger signals in time to have warned him of his danger and peril and to have enabled him to have escaped from the destruction of the approaching train, and did not give said danger or distress signals until after it had struck the deceased..

5. The court properly instructed the jury. The instructions given by the court were approved by this court in a similar case in 25 Ky. Law Rep., 1033, in L. & N. R. R. Co. v. Price's Admr.

AUTHORITIES CITED.

C. & O. Ry. Co. v. Keelin's Admr., 22 Ky. Law Rep., 1943; Conley's Admr. v. C., N. O. & T. P. Ry. Co., 89 Ky., 407; L. & N. Ry. Co. v. Brown's Admr., 17 Ky. Law Rep., 145; L. & N. Ry. Co. v. Schuster, 10 Ky. Law Rep., 67; L. & N. Ry. Co. v. Hoehl, 12 Bush., 50; L. & N. Ry. Co. v. Howard, 62 Ky., 215; C. & O. Ry. Co. v. Perkins, 20 Ky. Law Rep., 610; L. & N. Ry. Co. v. Krey, 16 Ky. Law Rep., 797; L. & N. Ry. Co. v. Hackman, 17 Ky. Law Rep., 81; Passamaneck's Admr. v. Louisville Ry., 17 Ky. Law Rep., 767; Sherman & Redfield on Negligence, section 114; Beach on Contributory Negligence, section 163; Ramsey v. L., C. & L. Ry. Co., 89 Ky., 103; Wright v. Cincinnati, &c., 94 Ky., 114; Paducah & Memphis R. R. Co. v. Hiehl, 12 Bush., 45; Cahill v. Cincinnati, &c.,

R. R. Co., 92 Ky., 349; Paducah & C. R. R. Co. v. Hoehl, 12 Bush., 41; Louisville & C. R. R. Co. v. Goetz, 79 Ky., 444; Connell v. C. & O. Ry. Co., 22 Ky. Law Rep., 501; Shelby's Admr. v. Railroad, 85 Ky., 224; Conley's Admr. v. C., N. O. & T. P. Ry. Co., 89 Ky., 402; Clasdin's Admr. v. Lexington & Big Sandy R. R., 13 Bush., 642; L. & N. R. R. Co. v. Commonwealth, — —., 389; L. & N. R. R. Co. v. Survant, 96 Ky., 206; L. & N. R. R. Co. v. Logsden's Admr., 26 Ky. Law Rep., 457; Shelby's Admr. v. C., N. O. & T. P. Ry. Co., 85 Ky., 224; Thompson on Negligence, Vol. 1, 453; Wilmouth's Admr. v. I. C. R. R. Co., 25 Ky. Law Rep., 673 L. & N. R. R. Co. v. Price's Admr., 25 Ky. Law. Rep., 1033.

Opinion of the Court by Judge Settle—Reversing.

Appellee, as administratrix of the estate of her deceased husband, J. R. Redmon, by suit in the Nelson Circuit Court recovered of appellant a verdict and judgment for $2,500 damages for his death, resulting from injuries inflicted by one of its passenger trains which ran against him in the village of New Haven.

In the motion and grounds for a new trial complaint was made by appellant that numerous errors were committed to its prejudice by the lower court during the progress of the trial, and these alleged errors are relied upon on this appeal for a reversal of the judgment. Chief among them was the refusal of the court to give a peremptory instruction directing the jury to find for appellant; such instruction having been requested by it following the introduction of appellee's evidence, and again when all the evidence had been heard by the jury. We will first consider this contention. According to the evidence the deceased was struck by the train at a cattle guard over which he was attempting to cross to reach a public street of the town, the cattle guard being only

a few feet from where the street or turnpike crosses appellant's railroad track. Appellant's track and the ground on either side of it belonging to its right of way is fenced from the cattle guard to the railroad bridge across Rolling Fork river; the bridge being about 700 feet from and north of the cattle guard. The fence on either side of the right of way is made to connect with the side of the bridge at its south end, so by means of the fence on each side, the bridge at one end and the cattle guard at the other, appellant's right of way from the point where deceased was struck by the train to the river is entirely inclosed. Although a part, and possibly all, of appellant's right of way between the cattle guard and the river is within the corporate limits of the town of New Haven, no part of the town in fact lies north of the cattle guard—that is, there are no streets on or along the sides of appellant's right of way between the cattle guard and bridge, and no houses fronting thereon, though it was in proof that persons in going to a mill on the river below the bridge sometimes passed over the cattle guard and walked through appellant's inclosure, and over its right of way, getting over the fence near the bride, and also that pedestrians from Larue county—the line between which and Nelson county at that point is the river—frequently would cross on the bridge and enter New Haven through appellant's inclosure.

It further appears that about half an hour before deceased was injured he left his store and. passing over the cattle guard, walked up the railroad track a distance of 100 feet to his garden, which fronts appellant's right of way, and is separated therefrom by the fence. After working a while in the garden,

he left it, and started toward his store, walking down appellant's right of way, not on the railroad track, but beside it, in a path that ran close to the ends of the ties. At the time deceased left the garden the train was in plain view of him, as it had then crossed the bridge, but apparently without heeding its coming he walked on ahead of it until he reached the cattle guard, and then stepped upon the track and attempted to pass over the cattle guard ahead of the train, when it was within 15 or 20 feet of him. If the deceased had no right to use the railroad track at the place and at the time he was injured, he was a trespasser, and, if a trespasser, those in charge of the train owed him no duty except to use reasonable care to prevent the train from striking or running over him after discovering his peril; upon the other hand, if, at the time of receiving his injuries, he was in the rightful use of the railroad track, those in charge of the train owed him a higher duty—that is, to use ordinary care to discover his presence, and to give such signals or warnings of the approach of the train as were reasonably necessary to inform him of the danger he would incur in walking too near the track, or in getting upon it in front of the train.

It is alleged in appellee's petition that deceased was injured while "upon or near the public road and street of the city of New Haven." According to the undisputed facts deceased was not upon the public road or street of New Haven when injured. It is true, he was at the time near a road or street of the city where it crosses the railroad track, but never-theless on the right of way and track of appellant, which the public had no right to use, and to prevent the use of which the cattle guard was constructed.

Where the streets of a town or city are occupied by the tracks of a railroad company, the railroad and the public have mutual rights, and owe to each other reciprocal duties in the exercise and protection of such rights; it being the duty of those in charge of the train in such a state of case to use ordinary care to prevent injury to persons in the way of the train, by slackening its speed, giving the customary signals of its approach, and keeping a constant lookout, and likewise the duty of persons using the street or railroad track over which the train has the right of passage to use the same degree of care in protecting themselves against collision with and injury from the train. But, while this is true, a railroad company may have the exclusive use of so much of its right of way within the corporate limits of a town or city as is not situated upon or immediately paralleled by streets, highways, or alleys, to the use of which the public are entitled, and especially is this true if the right of way be inclosed to prevent its use by the public.

It is argued by counsel for appellee that appellant did not exhibit title to the right of way from the cattle guard to the bridge. We do not think the introduction of title papers was necessary, as the testimony without contradiction showed that the right of way in question has been occupied by appellant's railroad track and been in its actual adverse possession continuously for more than 45 years, though not so long inclosed, nor is it material that all of the fencing separating the right of way from the adjoining lands of others was not built by appellant. The proof was conclusive that the right of way from the cattle guard to the river was completely inclosed

by fences, wings, the cattle guard and bridge, and a more effective way of asserting exclusive dominion over property cannot be adopted by the owner or claimant than having it inclosed. As the right of way in question is not situated upon or paralleled by a street, no houses front on it, and it is inclosed to prevent its use by the public, the fact that residents of New Haven often, or even habitually, used it in passing between the cattle guard and the bridge, or intermediate points, or that persons from Larue county frequently did so, whether by walking on the track or on the right of way outside of the rails, did not. amount to license to so use it, or impose any greater duty upon appellant with respect to the safety of those enjoying such use; hence the testimony admitted on that point was incompetent. In Brown's Adm,r v. L: & N. R. R. Co., 97 Ky. 228, 17 Ky. Law Rep., 145, 30 S. W. 639, it was said by this court: "We think the better doctrine is that simple acquiescence on the part of a railroad company in the use of its tracks in this way does not confer authority or right, nor amount to license so to use." Embry v. L. & N. R. R. Co., 36 S. W. 1123, 18 Ky. Law Rep. 436. Upon the facts of the case at bar there is no escaping the conclusion that the decedent was at the time of receiving his injuries a trespasser, and this being true, there should have been no recovery of damages against appellant, unless its servants in charge of the train, after discovering the decedent's danger could, by the exercise of ordinary care, have prevented it from striking him.

Measuring the facts of this case by the above rule, let us see if there was any neglect upon the part of

the trainmen. From the evidence as a whole, there can be no doubt but that the train whistle blew beyond the bridge, and that it again blew after crossing the bridge and before reaching an elm tree that stands between the bridge and the cattle guard; the second whistle doubtless being the signal for the crossing beyond and near the cattle guard, and probably for the New Haven depot as well. In addition to these signals, there were numerous alarm blasts of the whistle given just before and at the time deceased was struck by the train. Indeed, nearly all the witnesses in the case either saw or heard the train as it approached New Haven. There was some difference of statement among them as to when, where, and how often the train whistled, but practically none as to the fact that it signaled more than once as it approached. We do not think there can be any doubt from the testimony that deceased heard the signals given by the train and saw it as it approached, for he was in his garden, with nothing to obstruct the sound of the whistle or his view. The train arrived at New Haven on its schedule time; it was a regular train, and deceased, being postmaster, knew when it was due. Besides, according to the evidence, when the train whistle blew beyond and near the bridge he quit his work in the garden, climbed upon the fence that separated his garden from appellant's right of way, sat there until the train crossed the bridge in plain view of him, then got down and walked down appellant's right of way beside the track toward the cattle guard, upon reaching which he for the first time stepped or was in the act of stepping upon the track in front of the train, when it struck him, producing the injuries that

caused his death. The witnesses who saw him struck by the train all agree that the deceased did not get upon the railroad track until he reached the cattle guard, down to which time he had been walking beside the track, and was in no danger from the train, and all seem to agree that when he stepped upon the cattle guard the engine was only 15 or 20 feet behind him. It also appears that, as he stepped upon the cattle guard, the whistle began to sound the alarm. The engineer and fireman then in charge of the train testified, in substance, that they saw the deceased walking down appellant's right of way ahead of the train; that he was not on the track, but walking by the side of it and at the end of the ties, until he suddenly stepped or was in the act of stepping on the cattle guard just ahead of the train, and the engine was then so close to him that the pilot passed without striking him, but some other part of the engine, or a car behind it, did strike and injure him. Obviously, under the facts presented by the record, it was impossible for those in charge of the train to have stopped it, after the deceased got upon the railroad track, in time to prevent his injuries, even though the train had been running at a slower rate of speed than it was; and also apparent that as long as he continued to walk by the side of the track and beyond the ends of the ties he was in no danger of being struck by the train; therefore, he was not in peril until he stepped on the track in front of the train, and his peril could not have been known to the trainmen until it occurred, nor could they take any steps to prevent the train from striking him until such peril became known to them. Though they saw deceased walking by the side of the track ahead of

the train, they were not required to anticipate that
he would put himself in danger by getting on the
track in plain view and just ahead of the train.   On
the contrary, they had the right to assume that he
knew the train was approaching and near by, and
that he would keep off the track and out of danger.

Ward's Adm'r v. I. C. R. R. Co., 56 S. W. 807,
22 Ky. Law Rep. 191, was a case quite similar to the
one at bar.   Ward, while walking slowly along and
near a railroad track in the depot yard at Paducah,
suddenly staggered and got on the track, or so near
an approaching train that it struck and injured him,
causing his death.   In the opinion it is said: "The
circumstances of the case lead irresistibly to the
conclusion that the old man did not want to go down
into the ditch, and supposed he was far enough off
for the train to pass him, for he turned sideways
just as the train reached him, and was struck by the
bumper on the arm.   The proof shows that the bell
of the engine was ringing; it had whistled for the
street crossing about 100 yards away, and was
directly in front of him, and in open daylight.   The
rule is well settled in this State that those in charge
of a railroad train, on seeing a trespasser on the
track have a right to assume that he will get out of
the way, and take no steps to stop the train, or avoid
injury to him, unless they have reason to believe that
he is not aware of the danger, or unable to protect
himself.   Under this rule, on the facts of this case
the peremptory instruction was properly given."

In Brown's Adm'r v. L. & N. R. R. Co., supra, the
facts were also quite analogous to those of the case
at bar.   Brown was killed by a train between Broad-
way and Baxter avenue, in the city of Louisville, at

a place much more used by pedestrians than appellant's right of way between the cattle guard and the bridge at New Haven. In the Brown case a recovery was sought against the company for his death, on the ground that the track was much used by pedestrians, and for that reason the company owed the duty of keeping a lookout for Brown, and warning him of the approaching train. The jury, under a peremptory instruction from the lower court, found for the defendant. This court approved the giving of the peremptory instruction, and affirmed the judgment.

It is, however, argued by learned counsel for appellee that appellant's train at the time deceased was injured was running at a greater rate of speed than was proper in a town, or was allowed by the town's ordinances. There was considerable conflict in the evidence as to the rate of speed at which the train was going; some of appellee's witnesses putting it at from 15 to 20 miles an hour, and others at a less rate. Appellant's witnesses fixed its speed at 7 or 8 miles an hour. But we think it must have been running much slower than indicated by appellee's testimony, for, according to the statements of practically all the witnesses, when it stopped after striking deceased, the rear coach was standing over the cattle guard where he was injured. It follows, therefore, that it was stopped within a distance a little less than the length of the train, which was composed of an engine, tender, baggage car, and three passenger coaches. But if it were true that the train was running faster than was permitted by an ordinance of the city of New Haven, we do not think it would show negligence. In Ward's Adm'r v. L.

C. R. R. Co., supra, this court, in discussing the effect of municipal ordinances in cases of this character, said: "But it is insisted that the train was running faster than the ordinances of the city allowed it to run, and that this constitutes such negligence as to make appellee liable. While there is a conflict of authority as to the effect of municipal ordinances in cases of this character, the rule is well settled in this State that such ordinances are not admissible, and that running in violation of them is not negligence." L. & N. R. R. Co. v. Dalton, 102 Ky. 290; 43 S. W. 431, 19 Ky. Law Rep. 1318; Dolfinger v. Fishback, 12 Bush 474. As appellant's right of way between the cattle guard and bridge is not upon or contiguous to a parallel street, or open to the use of the public, its trainmen had the right to regulate the speed of the trains thereon as they deemed proper. In view of the foregoing authorities, it is patent that the court erred in admitting the speed ordinance of New Haven in evidence.

It insisted for appellant that the court erred in permitting testimony as to the use made by the public of the crossing near which the accident occurred. We are of opinion that such testimony was incompetent, as the injury to deceased happened away from, though near the crossing, and within the inclosure of appellant. While it is the duty of those in charge of trains, in approaching a public crossing, whether in a city or the country, to give the customary and necessary signals for the protection of persons having the right to use such crossing this duty need not be performed for the benefit of trespassers who may be using the track elsewhere In Shackelford's Adm'r v. L. & N. R. R. Co., 84 Ky.

43, 7 Ky. Law Rep., 729, it is said: "Railroad trains must give the customary signals at public places or public crossings. The failure to do so is negligence, but this is required for the safety of passengers, trainmen, and the public using, and who have the right to use, the track at such public ways, and not for the purpose of protecting those who, as trespassers, may be crossing or using the tracks elsewhere. The instances are numberless upon every railroad of persons living along it, and having to and being in the habit of crossing the track to pass from the dwelling to the outbuildings, or vice versa; and to require the companies in all such cases to signal the approach of their trains and to presume and guard against the presence of persons upon the track would not only be unreasonable, but detrimental to public travel." In Davis' Adm'r v. C. & O. Ry. Co., 116 Ky. 144, 75 S. W. 275, 25 Ky. Law Rep. 342, still another case very much like the one at bar, the petition alleged that plaintiff's intestate was killed "at or near the public crossing." In the opinion we find the following statement of the law: "From the averments the court concludes that the intestate had the right to use the private crossing, but under the rule that a pleading must be construed most strongly against the pleader, the averment that she was killed 'at or near the crossing' is equivalent to the averrment that she was not killed on it, but near the crossing; hence, she was a trespasser. This being true, under the well-settled rule of this court, those in charge of the train owed her no duty except to use reasonable care to save her after discovering her peril. As she was not on a crossing when killed, it canot be claimed that, as to

the intestate, it was negligence to fail to give signals on the approach to either the private or public crossing.'' L. & N. R. R. Co. v. Vittitoe's Adm'r, 41 S. W. 269, 19 Ky. Law Rep. 612.

We do not think it was made to appear in this case that appellant's trainmen failed to give the customary signals in approaching the streets and public crossing in New Haven; but if they had not done so, it was not negligence as to the deceased, who, as repeatedly stated, was not at the time of the accident on a street or the public crossing of the town, but a trespasser on appellant's right of way and within its inclosure. In view of the failure of deceased to use ordinary care, at the time of receiving his injuries, to keep out of the way of the train, we think the conclusion inevitable that his injuries resulted from and were caused solely by his own negligence, or accident, in stepping on the railroad track in front of the train, when it was so near him that it was beyond the power of those in charge thereof to stop it in time to prevent his injuries.

Several witnesses testified that the deceased was in poor health for a year or more before his death; that in walking about he would sometimes stagger suddenly, and had even been known on one or two occasions to fall when thus affected; whether these spells were from vertigo or some other cause does not fully appear, but the most reasonable solution of his conduct in stepping on the track in front of the train is that he did so from illness and sudden weakness; but whatever the cause, it was his own act.

Being of the opinion that the peremptory instruction asked by appellant should have been given, it is

unnecessary to consider others that were given or refused.

Wherefore the judgment is reversed, and cause remanded for a new trial and other proceedings consistent with this opinion.

CANTRILL and NUNN JJ., dissent.