## Chesapeake & Ohio Railway Company v. Hunter's Administrator.

### (Decided May 4, 1916.)

### Appeal from Floyd Circuit Court.

1. Railroads—Crossings—Lookout Duty.—In order to impose a lookout duty upon a railroad company while running its trains over a private country crossing, it must be shown that the crossing was a place where the presence of persons on the track was to be expected; and that fact may be shown by the extent of the use made of the crossing by the public.

2. Railroads—Negligence.—When an adult person steps on a railroad track in front of and in full view of an approaching train, those in charge of the train have the right to assume that his own consciousness of danger will cause him to leave the track before the train reaches him.

3. Railroads—Negligence—Personal Injuries.—Where one walks upon a railroad track immediately in front of a rapidly approaching train, which he sees and knows to be approaching, or which he could have seen by the exercise of ordinary care for his own safety, and is injured, he cannot recover from the railroad company because his own negligence was the immediate and proximate cause of his injury.

HARKINS & HARKINS, WORTHINGTON, COCHRAN & BROWNING and F. T. D. WALLACE for appellant.

HOPKINS & HOPKINS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Reversing.

On November 5th, 1913, Jemima Hunter, wife of Joseph M. Hunter, and 69 years old, was struck and killed by one of appellant's west bound trains while she was crossing the appellant's railroad track at a private crossing about four miles west of Prestonsburg.

Hunter lived in a house situated about fifty feet south of the railroad track, and about one hundred feet southwest of the crossing. The Big Sandy river runs about 250 feet north of the track and nearly parallel with it. A footpath led from the house along the side of the railroad track to the crossing and thence over the track to the river.

On the day of the accident, Hunter had left the house about the middle of the afternoon for the purpose of going to the river to get water for his stock. He had crossed the track and reached a point about thirty feet north of it, when he heard the west bound train from Pikeville approaching around a slight curve. He stopped and looked at the approaching train, which was then about five hundred feet away. He testified that from the position where he stood he could have seen the train when it was six hundred feet from him, but that his attention was not called to the train and he did not actually see it until it was about five hundred feet distant.

After Hunter had stopped to look at the train, he happened to turn his head toward the crossing and saw his wife walking along the path by the side of the track toward the crossing, and perhaps ten or fifteen feet from it. She was facing the train and had a cape and shoulder shawl tied over her ears. She was walking slowly and was looking down or toward the ground. She had a bucket in her hand and evidently was following her husband to the river, for water.

Hunter testified that he did not think his wife contemplated crossing the track in front of the train, and that he did not call to her to stop, when he first saw her. But when he saw her start to cross the track, he called in a loud voice to her to go back; but she did not hear him and continued walking. She needed only one step to clear the track, when she was struck by the engine and almost instantly killed.

The fireman and engineer testified that the train was traveling at a speed of from twenty to twenty-five miles an hour, and that it was eight or ten minutes late. Other witnesses testified that the train was going faster and was perhaps half an hour late.

The engineer, who was standing in his place in the cab, which was on the side opposite from the Hunter residence, testified that he did not see Mrs. Hunter until

the engine was within ten or fifteen feet of her, and that he immediately applied the emergency brake and did everything within his power to stop the train. His inability to see her arose from the fact that he was on the north side of the engine which was coming around a slight curve, while Mrs. Hunter was approaching the track from the south side. The fireman testified that when he first saw Mrs. Hunter walking along the path toward the crossing, the engine was about 150 feet from the crossing, but as she was in a place of safety and had not reached the crossing, he naturally assumed that she would not attempt to cross the track in front of the train. He says there was nothing to indicate to any one that she would make such an attempt; but that when the train had reached a point about fifty or sixty feet from the crossing, she started across the track, and that it was then impossible to stop the train before it struck her.

This action was filed against the railroad company by Joseph M. Hunter, administrator of his wife, to recover damages for it having negligently caused the death of Mrs. Hunter, by failing to give notice of the train's approach.

At the conclusion of the plaintiff's testimony, the defendant moved the court to instruct the jury to find for the defendant; and at the conclusion of all the testimony, that motion was repeated.

In each instance, however, the motion was overruled; and the plaintiff having recovered a verdict and judgment for $1,200.00, the company appeals.

Although this was a private country crossing, the court instructed the jury, as a matter of law, that the defendant owed the decedent a lookout duty, without leaving it to the jury to find the facts as to the use of the crossing; and of this the appellant complains strenuously. It further contends that its motion for a peremptory instruction should have been sustained. Several other alleged errors are relied upon for a reversal, but it will not be necessary to consider them.

The crossing which Mrs. Hunter was using at the time she was struck and killed, was an ordinary private farm crossing; it does not appear that it was even a wagon road crossing, although we will so treat it.

In order to impose a lookout duty upon a railroad company while running its trains over a private country

crossing, it must be shown that the place of the accident was a place where the presence of persons on the track was to be expected; and that fact may be shown by the extent of the use made of the crossing by the public. C. & O. Ry. Co. v. Warnock's Admr., 150 Ky. 75; Carter v. C. & O. Ry. Co., 150 Ky. 529.

In order to establish the necessity of a lookout duty upon the part of the company, the plaintiff undertook to prove that this crossing was used by other farmers in the neighborhood; but the proof wholly fails to show that it was used by a sufficient number of persons, or by any specified number of persons, or so frequently, as to make it a place where the presence of persons upon the track might reasonably have been anticipated. The proof is very meager upon this point, and certainly it is not sufficient to impose a lookout duty upon the company. It is only when the use of the track by the public for crossing purposes is general and acquiesced in by the railway company, whereby the trespasser becomes a licensee, that the company owes him a lookout duty. Cahill v. C., N. O. & T. P. Ry. Co., 92 Ky. 345; L. & N. R. R. Co. v. McNary's Admr., 128 Ky. 420; Corder's Admr. v. C., N. O. & T. P. Ry. Co., 155 Ky. 536. But this condition has by no means been shown. The crossing was unquestionably a private crossing within the farm, and principally, if not entirely, used by the occupant of the farm, in farming activities. It did not rise to the dignity of a neighborhood roadway.

Under this proof it follows that the company was under no obligation to give the signals of the approach of the train to the crossing in question. L. & N. R. R. Co. v. Survant, 19 Ky. L. R. 1576; L. & N. R. R. Co. v. Engleman's Admr., 135 Ky. 515. It owed the decedent the duty only of using ordinary care to save her from injury after her peril was discovered by those in charge of the train. L. & N. R. R. Co. v. Howard's Admr., 82 Ky. 212; Shackelford's Admr. v. L. & N. R. R. Co., 84 Ky. 43, 4 Am. St. Rep., 189; Brown's Admr. v. L. & N. R. R. Co., 97 Ky. 228; Goodman's Admr. v. L. & N. R. R. Co., 116 Ky. 900; L. & N. R. R. Co. v. McNary's Admr., 128 Ky. 414, 17 L. R. A. (N. S.) 224, 129 Am. St. Rep. 306.

Furthermore, we are clearly of opinion that defendant's motion for a directed verdict should have been sustained. There is no contradiction in the testimony, that

Mrs. Hunter was walking up the path near the track, and facing the coming train, which she could have seen for a distance of 600 feet if she had looked, or had exercised even slight care. Under these circumstances no one would suppose that she would attempt to cross the track immediately in front of the train, which was directly in her line of vision. Her husband testified that he did not give her warning when he first saw her walking along the track, because he did not believe she would attempt to cross the track; yet, he must recover, if at all, upon the theory that the engineer and fireman must have believed that she did then intend to cross the track.

While Hunter was standing not more than 40 or 50 feet distant from his wife, he saw the approaching train 500 feet away, and it is perfectly apparent that she could have seen it as easily as he. Mrs. Hunter either failed to see the approaching train, or having seen it, she attempted to cross the track in front of it and miscalculated the speed at which the train was approaching. In either case her own negligence was the proximate cause of her death.

It is well settled law that when an adult person steps on a railroad track, in front of or in full view of an approaching train, those in charge have the right to presume that his own consciousness of danger will cause him to leave it before the train reaches him. L. & N. R. R. Co. v. Molloy's Admr., 122 Ky. 219; I. C. Ry. Co. v. Willis' Admr., 123 Ky. 645; Johnson's Admr. v. L. & N. R. R. Co., 91 Ky. 651.

In L. & N. R. R. Co. v. Redmon's Admx., 122 Ky. 385, Redmon was walking along the right-of-way, and when the engine was a short distance from him, he stepped upon the track.

In that case, as in the case here, the engineer and fireman saw him walking by the side of the track and at the end of the ties, when he suddenly stepped upon the track and was struck by the engine and killed.

In the Redmon case, the court said:

"Obviously, under the facts presented by the record, it was impossible for those in charge of the train to have stopped it, after the deceased got upon the railroad track, in time to prevent his injuries, even though the train had been running at a slower rate of speed than it was; and also apparent that as long as he continued to walk by the side of the track and beyond the

ends of the ties he was in no danger of being struck by the train; therefore, he was not in peril until he stepped on the track in front of the train, and his peril could not have been known to the trainmen until it occurred, nor could they take any steps to prevent the train from striking him until such peril became known to them. Though they saw deceased walking by the side of the track ahead of the train, they were not required to anticipate that he would put himself in danger by getting on the track in plain view and just ahead of the train. On the contrary, they had the right to assume that he knew the train was approaching and near by, and that he would keep off the track and out of danger."

In I. C. Ry. Co. v. Dupree, 138 Ky. 463, a child five years old attempted to cross the street in front of a moving train, and was struck and injured.

In directing a peremptory instruction, the court said:

"According to all the proof, however, the child darted across the track immediately in front of the engine. Those in charge of the engine could not have anticipated that the child, who was in a place of safety, would suddenly take a notion to run across the track immediately in front of the engine. They had a right to assume that she would remain in a place of safety until it became reasonably apparent that she intended to cross the track. When she did start across the track, everything was done that could have been done to avoid the injury. As she ran rapidly and immediately in front of the engine, it is immaterial whether the speed of the train was five, ten, or fifteen miles an hour, for no power on earth could have stopped the train in time to avoid the injury. That being the case, the appellee failed to show that the negligence of appellant was the proximate cause of the injury complained of. On the contrary, all the evidence goes to show that appellee's injuries were the result of an unfortunate accident, for which appellant was in nowise responsible. Under these circumstances, we conclude that the trial court erred in failing to give a peremptory instruction in favor of appellant."

To the same effect see Helm v. L. & N. R. R. Co., 19 Ky. L. R. 1004; L. & N. R. R. Co. v. Taaffe's Admr., 106 Ky. 535; L. & N. R. R. Co. v. Towser's Admr., 131

Ky. 589, 20 L. R. A. (N. S.) 380; Helton's Admr. v. C. & O. Ry. Co., 157 Ky. 380.

In the late case of L. & N. R. R. Co. v. Taylor's Admr., 169 Ky. 435, Taylor, a man 68 years of age, was walking between the main track and the switch track and towards a train approaching him upon the main track. Taylor attempted to cross the main track in front of the train and was killed. In reversing a judgment for the plaintiff, this court cited L. & N. R. R. Co. v. Towser's Admr., 131 Ky. 589, and L. & N. R. R. Co. v. Fentress' Admr., 166 Ky. 477, and held there could be no recovery since Taylor's own negligence caused his death.

These decisions all rest upon the well recognized principle of law that it is such negligence for one to go upon a railroad track immediately in front of a rapidly approaching train, which he sees and knows to be approaching, or which he could have seen by the exercise of ordinary care for his own safety, that he cannot recover from the railroad company, not because it was free from negligence, but because his own negligence was the immediate and proximate cause of his injury. L. H. & St. L. Ry. Co. v. Lyons, 146 Ky. 610; Bauer v. I. C. R. R. Co., 156 Ky. 188; C. & O. Ry. Co. v. Ransom's Admr., 164 Ky. 634.

The judgment is reversed for further proceedings consistent with this opinion.