## Louisville & Interurban Railroad Company v. Kirk, Administrator, et al.

(Decided May 11, 1917.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

Railroads—Operation—Lookouts.—A lookout duty is required of those operating a railroad train or car, wherever they have knowledge of the presence of persons upon the track, or so near to it as to be endangered by the cars, or have knowledge of such facts as would cause reasonable men to expect persons upon the track and therefore to anticipate their presence.

ALFRED SELLIGMAN, FRANK P. STRAUS, HOWARD B. LEE, HOUSTON QUIN and ALFRED KRIEGER for appellant.

ROBERT L. PAGE and EDWARDS, OGDEN & PEAK for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This was an action by the administrator of C. R. Kirk, deceased, to recover damages for his death, caused, as it was alleged, by the negligence of the servants of the appellant, in the operation of one of its cars. The car ran over the deceased near Bethany church on the line of appellant's road between Louisville and Orell. The cars upon appellant's road are propelled by electricity, and

its contact with the decedent, who was a lad sixteen years of age, resulted in his instant death. At the conclusion of the evidence offered by appellee and at the conclusion of all the evidence, the appellant moved the court to peremptorily direct a verdict in its favor, which motion the court overruled, in each instance. The trial resulted in a verdict and judgment in favor of appellee for the sum of one thousand dollars, and its motion for a new trial having been overruled, it has appealed. The only ground upon which it is insisted, that a reversal of the judgment ought to be had, is the alleged error of the trial court in overruling appellant's motion for a direct verdict, and the appellant in its brief specifically waives every other error, if there are any such.

The negligence relied upon by the appellee, as his cause of action, consists, as alleged, in the servants of appellant operating its car at a reckless rate of speed and failing to have it under control, and failing to maintain a lookout as it approached the place, where it came in contact with deceased, and in failing to give any warning of its approach, The evidence discloses that the place where and the circumstances under which the deceased was killed are substantially as follows:

On appellant's road is a station called Bethany, which stands on the west side of the tracks, just at the corner of Bethany church lot, and just at the point where a public highway crosses the railroad—the highway running from the east to the west. Upon the east side of the railroad tracks, at this point, and running parallel with the railroad right of way, and only a few feet from the railroad tracks, is a public highway, along which, a turnpike is maintained. The lot upon which Bethany church stands is on the west side of the tracks and joins and abuts upon the right of way, immediately, from the station to about ninety to one hundred feet toward the south. The tracks are only a few feet from the line of the lot upon which the church stands. There is no fence, ditch nor other obstruction of any kind between the turnpike and the tracks of the railroad, nor between them and the lot, upon which the church stands, and persons passing from the pike to the church pass over the tracks at grade. Just at the south line of the lot, a private crossing passes over the tracks into a farm, which lies along the south line of the church lot. The deceased was killed about ten o'clock p. m., on the first day of

August. On that evening, a picnic or church social was in progress on the lot of the church, at which, from two hundred to three hundred men, women and children were congregated. The crowd was mostly congregated between the church building and the tracks of the railroad, but the lot being small, the crowd overflowed on to the tracks of the railroad and to the pike, and children were playing over the grounds and back and forth and up and down, across and along the railroad tracks. A phonograph was being operated upon the church lot at the side of the right of way and immediately against the right of way. Carriages, drawn by horses, and automobiles were scattered along the right of way on the side next to the turnpike, and extended from the station down to a point beyond where the decedent was struck by the car. The appellant's car, with one Kelly as motorman, made a trip every two hours, over the road and passed the church and station, while the crowd was there and before the death of the deceased. The car passed going toward Orell, just about ten o'clock, and returned in about ten minutes; and as it approached the crowd and station the deceased was run over upon the tracks and killed at a point about forty-five feet south of the line of the church lot, in the direction of Orell. The car was stopped at about forty-five feet from the place of its contact with deceased, when his body was removed from underneath the car. The deceased, who a very few minutes before, had been at the station, apparently in a sober but sleepy condition, had apparently for some reason been overcome with sleep or sudden sickness, and was lying down between the tracks of the railroad. No one saw him go to that place, but a witness testifies to having seen him there, just as the car approached, and the motorman testifies that he was lying upon the track and about ten feet in front of the car when he first saw him. As to whether he was asleep or overcome by sudden sickness, or what was the cause of his having laid down upon the track, is not known. The evidence was very conflicting as to whether any signal of the car's approach was given. A considerable number of persons were at that time standing at the station about one hundred and fifty feet from where the car struck the decedent, and a majority of the witnesses, some of whom stated that they were observing the approach of the car, testify that the whistle was not blown nor the bell rung, while others, including the mo-

torman, testify that the whistle was blown several times, as the car approached in the direction of the station. Some of the witnesses stated that the car was being run "very fast," while the carmen represented that it was moving at about twelve miles an hour. The headlight of the car was at its usual brilliancy, and witnesses testified that a small object could be seen upon the track in front of the car from two hundred to three hundred feet by one observing the tracks from the motorman's position upon the car. The motorman testified that he was looking directly in front of the car along the track, but did not see the deceased upon the track, until the car was within ten feet of his body; that deceased was lying between the tracks, and he, the motorman, immediately, resorted to the emergency brake and did everything he could to save the deceased. The motorman accounted for his failure to see deceased by stating that there were trees near the tracks, which cast shadows over it and that weeds were growing between the tracks, which would have a tendency to obscure the body of the deceased from his sight. Photographs of the place of the accident and of the surrounding grounds and the railroad track were put in evidence. Other witnesses testified that the motorman, as the car approached, was not keeping a lookout in front of the car, but had his face turned to the side and was engaged in conversation with some one upon the car.

It is very clear, that, if it was not the duty of the ones operating the car to maintain a lookout, to approach at a reasonable rate of speed, and to give warnings of the approach of the car, that the negligence of the deceased, in being upon the tracks of the railroad, was the entire cause of his death, and that appellant cannot be held responsible for it, unless the motorman, after having seen the peril of the deceased, failed to exercise ordinary care to prevent injury to him. If it was the duty of appellant's servants to maintain a lookout at such place, to give warnings of the approach of the car, and to approach with the car under control, and they failed in any of these duties, and but for such failure the deceased would not have been killed, then the appellant is culpable. Although the deceased failed to exercise ordinary care for his own safety, in keeping out of the way of the car and was negligent in failing to do so, yet, if it was the duty of the motorman to keep a lookout for persons upon the tracks, at

that place, and to approach with the car moving at a reasonable rate of speed, and to give warning of the approach, and could have seen the presence of the deceased upon the tracks, at the place where he was, by maintaining a lookout, and could have then stopped the car before running over him, and failed to know of his presence on the tracks by failing to maintain a lookout, and such failure was thereby the proximate cause of the death of deceased, it was a question for the jury to determine from the evidence whether or not the lookout duties were performed, and whether the failure was the cause of the injury, although there was evidence which tended to prove to the contrary.

The contention of appellant is, that the deceased was a trespasser upon its road, and that it owed him no duty, except to exercise ordinary care to avoid injury to him after the motorman saw his peril, and that there was no evidence which tended to prove that the motorman knew of the decedent's peril until it was impossible, by the exercise of ordinary care, to avoid killing him, and hence a peremptory instruction should have been given directing the jury to find for it.

Thus the question is presented, whether at the time and place of the killing of deceased, it was the duty of the motorman to maintain a lookout for persons upon the track or so near thereto as to be in danger of being struck by the car, to operate the car at a reasonable rate of speed, so as to have it under control, and to give warnings of the car's approach.

The point at which decedent was killed was in the country several miles from the city of Louisville, near a private crossing and about one hundred and fifty feet from a station on the railroad and a public crossing. We are asked to apply the doctrine held by this court, in regard to the duties of the railroad company, when one of its cars approaches and passes over a private crossing in the country. It is true, a lookout duty is not required of a railroad at a private crossing in the country, because so few persons use it—generally one proprietor and his family—that it cannot be reasonably anticipated, that anyone will be upon the crossing, and over such crossings a railroad company may operate its trains at such speed as is consistent with the safety of its passengers, and it is not required to give any warnings of the approach of its trains to such crossings, unless it has been

customary to do so, or where the crossing is one, where the presence of persons upon the track is to be expected and therefore to be anticipated, and the presence of persons is not to be expected upon such crossings, unless the public generally uses the crossing and the railroad has acquiesced in the use. Stull's Admrx. v. Kentucky T. & T. Co., 172 Ky. 650; Speigel v. C., N. O. & T. P. Ry. Co., 170 Ky. 285; C. & O. Ry. Co. v. Hunter, 170 Ky. 4; L. & N. R. R. Co. v. Engleman, 135 Ky. 515; Early's Admrx. v. Louisville R. R. Co., 115 Ky. 13. The above doctrine has been upheld by this court in many cases, but these cases have no application to the facts of the instant case, as the deceased was not upon a private crossing nor attempting to use one, although he was near to one when struck by the car.

It is, also, an established doctrine, that the railroad companies, in the operation of their cars, do not owe any lookout duty to persons using their tracks as walkways in the country or in sparsely settled communities, except where the use of them is so considerable that, it is presumed, that the railroad company has knowledge of it and acquiesces in it. This rule has its reason in the fact, that it is not to be expected that persons in sparsely settled localities, will be found trespassing upon the tracks of the railroad and their presence at such places is therefore not to be anticipated. I. C. R. R. Co. v. Murphy, 123 Ky. 773; Mannine v. I. C. R. R. Co., 27 R. 142; Brown v. L. & N. R. R. Co., 97 Ky. 228; Yates v. I. C. R. R. Co., 89 S. W. 161, 28 R. 75; L. & N. R R. Co. v. Redmon, 122 Ky. 385; L. & N. R. R. Co. v. Molloy's Admr., 28 R. 113; Gregory v. L. & N. R. R. Co., 25 R. 1986; McKnight's Admr. v. L. & N. R. R. Co., 168 Ky. 86; L. & N. R. R. Co. v. McNary's Admr., 128 Ky. 420; Sizemore's Admr. v. Lexington & Eastern R. R. Co., 169 Ky. 497.

It has likewise been held that a lookout duty is incumbent upon those operating railroad cars where the road passes over and along the streets of towns, cities and other populous communities, without any further evidence of the necessity for the lookout duty, except the fact that the cars are passing through such populous communities, and as a matter of law, it is to be presumed, that persons will be upon the tracks or so near thereto, as to be in danger of injury, and in many cases it has been held that this rule did not apply in rural communities or sparsely settled regions, although the tracks at

some points might in such communities be used by a considerable number of persons each day. C. & O. Ry. Co. v. See's Admr., 25 R. 1995; C. & O. Ry. Co. v. Perkins, 20 R. 608; Davis v. L. H. & St. L. R. R. Co., 122 Ky. 528; McCabe's Admrx. v. Maysville & Big Sandy R. R. Co., 28 R. 536; Helton's Admr. v. C. & O. Ry. Co., 157 Ky. 380; Willis' Admx. v. L. & N. R. R. Co., 164 Ky. 124; C. & O. Ry. Co. v. Nipp's Admrx., 125 Ky. 49; Miller's Admr. v. I. C. R. R. Co., 118 S. W. 348; Cumberland R. Co. v. Walton, 166 Ky. 371; Sizemore's Admr. v. Lexington & Eastern R. R. Co., 167 Ky. 497. In no case, however, has it ever been held, in this jurisdiction, that, where the ones operating a railroad train or car have actual knowledge of trespassers upon the tracks of the railroad or have such reasonable and probable grounds for believing them to be there, that a reasonable mind would anticipate and expect their presence upon the tracks, that, they can shut their eyes and operate the train or car with ruthless disregard of such facts. There is no dispute that the ordinary rule is, that the railroad company owes to a mere trespasser upon its tracks no duty, except that of using reasonable care to avoid injuring him after his peril is discovered. The operatives of a railroad car are under no duty or obligation to exercise any active vigilance to provide against injuries to trespassers upon its tracks or right of way, until their presence is known, when they must exercise ordinary care to save them from injury. Louisville, etc. R. R. Co. v. Hocker, 111 Ky. 707; Adams v. Louisville, etc. R. R. Co., 31 R. 987; Prince v. I. C. R. R. Co., 30 R. 469; Smith v. I. C. R. R. Co., 28 R. 723; Wilmouth v. I. C. R. R. Co., 76 S. W. 193; Louisville, etc. R. R. Co. v. Vittitoe's Admr., 19 R. 612; Eastern R. R. Co. v. Powell, 33 S. W. 629; Goodman v. Louisville, etc. R. R. Co., 116 Ky. 900; Shackelford v Louisville, etc. R. R. Co., 84 Ky. 43.

The rule, which requires a lookout duty of the ones operating a railroad car through cities, towns or populous communities, and the rule, which requires such lookout duty at crossings in the country, which are generally used by the public with the acquiescence of the railroad company, are both based upon the presumption of knowledge by the railroads that persons are to be expected upon the railroad tracks at such places, and the rule, which does not require a lookout duty for trespassers, where they are not known to be upon the tracks of the railroad,

nor any reasonable grounds for expecting them to be there, and the rule, which does not require a lookout duty in the country for persons walking along or over the tracks of the railroads nor at private crossings, are likewise based in part upon the presumption that the presence of the trespasser is not known nor is the presence of persons at private crossings, nor walking upon the tracks, in the country, known, nor is there any reasonable grounds for expecting the presence of persons upon the tracks at such places.

In 33 Cyc. 772 the text is:

"While in some jurisdictions in order to render the railroad company liable for its failure to exercise ordinary care, there must be actual knowledge of the trespasser's peril imputable to the company, in most jurisdictions the company is under the duty of using reasonable care to discover and avoid injuring trespassers, whom it has reason to anticipate may be on the tracks, as where within the company's knowledge persons have been accustomed to be on the tracks at a certain place, as in a city or thickly settled community where persons are likely to be found trespassing."

In C., N. O. & T. P. Ry. Co. v. Winningham's Admr., 156 Ky. 434, it is said:

"It is of course difficult to lay down any general rule prescribing when or under what circumstances there is a duty to give warning of the approach of trains. In a general way that duty has been held to apply to places where the presence of persons on the track might be reasonably anticipated."

In I. C. R. R. Co. v. Murphy's Admr., *supra*, it was said:

"If the railroad company knows that the public habitually uses its tracks and right of way in a populous community as a foot passway, so that it knows that any moment people may be expected to be found thereon, such knowledge is treated as equivalent to seeing them there, and their presence must be taken into consideration by the train operatives in the movement of their trains. Such foot passengers may be in law only trespassers or licensees. They may, indeed, have no legal right to be there or to use the tracks; but the question comes back if they are there, and known to be there, what, then, is the company's duty as to running its trains? It is admitted that the company has the superior right-way—

may be has the exclusive right—to the tracks, and that some way ought to be provided for keeping trespassers off them altogether, but the fact remains, and tracks are open, inviting for easy travel, are traveled constantly, and so known to be by the company.''

In C. & O. Ry. Co. v. Hunter's Admr., 170 Ky. 5, it is said:

''In order to impose a lookout duty upon a railroad company while running its trains over a private country crossing, it must be shown that the place of the accident was a place where the presence of persons on the track was to be expected; and that fact may be shown by the extent of the use made of the crossing by the public.''

In I. C. R. R. Co. v. Murphy, *supra*, it is further said:

''But we think that the correlative principle must apply, that where there is knowledge of the presence of trespassers or licensees, or what is equivalent, notice of their expected or probable presence, the rate of speed may be negligent as to them, because there is then a duty to them, namely, to look out for them and take care not to run over or injure them.''

Hence, the reasonable and humane doctrine is deduced, that if a trespasser is on a railroad track at a place where his presence is not known and where it can not be reasonably anticipated, the railroad company is not required to look out for him, or to take any measures for his safety, except to keep from injuring him, if it can, reasonably, after his peril is discovered, but if his presence is known or is to be reasonably anticipated, then it is the duty of the railroad company, to take such precautions as the situation demands, to save the life of the trespasser, and it does not seem reasonable that this doctrine should not extend in its application to all places, where the operatives of railroad trains or cars know of the presence of persons upon the track of the road, or have knowledge of such facts, as would cause an expectation of their presence by reasonable men, and their presence, therefore, to be anticipated. While persons should not be guilty of trespassing upon the railroad's right of way, any more than they should trespass upon the rights or property of an individual, the law esteems the safety of human life far above such infractions of rights, as walking without authority upon an open right of way, and allowance has to be made for the weakness and thoughtlessness of many individuals.

Applying the above principle to the facts of this case, the evidence conduced to show, with slight contradictions, that the motorman knew of the presence of a large number of men, women and children, immediately beside the tracks, in the open, and near one of its stations, and passing back and forth across the tracks, because he saw them there several times during the afternoon and evening, and saw that they were still there less than ten minutes before the accident, and as a reasonable man, it seems, that he was obliged to expect the presence of some of them upon the railroad tracks, especially the youths and children, or else he was entirely ignorant of the habits and actions of human beings when gathered together in such numbers and at such a place, and engaged as they were. He saw three or more young girls run across the railroad track, when within three or four hundred yards, and just before the car struck the deceased. The motorman having actual knowledge of the presence of so large a number of persons, men, women and children, congregated at the point described, their activities, and the matters in which they were engaged, and the necessity of their coming and going therefrom, and the circumscribed nature of the locality, that he must necessarily have reasonably expected that some of them would be continuously crossing over or being upon the tracks of the railroad, or so near thereto as to endanger them, and such circumstances, if existing as the evidence tended to prove, were sufficient to impose upon the motorman a lookout duty. There was evidence, which tended to prove, that no warnings of the approach of the car were given; that the motorman, instead of maintaining a lookout in front of the car, was looking in another direction and engaged in conversation with a man upon the car; that if he had been maintaining a lookout, he could and would have seen the deceased upon the track, and, in time, by the exercise of ordinary care, to have stopped the car before it struck the deceased and to have saved his life. Whether all the evidence would have justified the jury in arriving at these conclusions were questions for its determination upon the testimony.

The court, therefore, did not err in denying the motion for a directed verdict, and the judgment is affirmed.