CASE 59.—ACTION BY JOHN E. TROWER'S TDMINISTRATOR AGAINST THE LOUISVILLE & NASHVILLE R. ?.. CO. FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE.—January 26.

# Louisville & Nashville R. R. Co. v. Trower's Admr.

Appeal from Boyle Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for plaintiff. Defendant appeals.—Reversed.

Railroads—Injury to Person Crossing Track—Contributory Negligence.—One who knowing and seeing that a train is coming, attempts to cross the track just in front of it at a station, is guilty of contributory negligence, barring recovery, though it was a fast special running on the time of a regular, and he may have thought it was the regular, which was to have stopped there.

CHARLES McDOWELL, CHAS. H. RHODES and BENJAMIN D. WARFIELD for appellant.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. In this action to recover damages for the killing of decedent by a train of appellant at Mitchellsburg, Ky., liability is sought to be predicated against appellant upon the grounds (1) that the train which struck decedent was a special train, running ahead of a local train, on which decedent, acting as a volunteer for the postmaster, was to place a mail sack and that (2) the special train was running at a negligent rate of speed. It is argued by appellee that decedent thought the train which struck him was the local train and thought it would slow down and stop; that, therefore, he miscalculated the speed of the train when, after he saw it coming, and near to him, he attempted to cross the track ahead of it.

Louisville & Nashville R. R. Co. v. Trower's Admr.

Appellant answers these contentions: (1) Appellant had the right to run as many trains and at such times and under such circumstances as it saw fit—as the exigencies of its business required—and that it did not owe to the public at the stations along its railroad the duty of giving notice as to what trains were to be run or as to whether or not they would stop at such stations; that it would not be feasible to give such notice, especially at non-telegraph stations, of which Mitchellsburg was one. (2) That while the speed of a train which does not stop at a station is naturally much greater as it approaches and passes through the station than the speed of a train which slows down and stops at the station, this does not constitute negligence on the part of the railroad company in running the train which does not stop through the station at the higher rate of speed than it would run a train that did stop, provided the speed is not unreasonably excessive, and there is not testimony in this case that the speed of the train which killed decedent was unreasonably excessive or excessive at all. A railroad company is not required by law to slacken the speed of its trains at country crossings and in passing through hamlets and villages where the population is sparse. (3) But, even if there had been negligence on the part of appellant, either as to running the extra train on or close to the time the local train was scheduled to arrive at Mitchellsburg or as to the speed at which the extra train was running at the time decedent was struck by it, he saw the train coming and attempted to cross the track ahead of it and paid the penalty of his temerity with his life. He was guilty of contributory negligence, as matter of law, such as ought to bar a recovery for his death, and the trial court erred in not peremptorily instructing the jury to find for appellant on that ground, all other questions aside. (4) There was nothing for the trial court to submit to the jury. Nevertheless, the court did submit the case to the jury under instructions that were most contradictory, inconsistent, and erroneous.

2. The court erred in overruling appellant's demurrer to the petition, and erred in not excusing juror J. T. Condor from service on the jury for cause shown by appellant.

L. & N. R. R. Co. v. Hocker, 111 Ky. 713; 3d Elliott on Railroads (2d Ed.) 579, 593; Gregory v. L. & N. R. R. Co., 79 S. W. 239, 25 Ky. Law Rep. 1986; Ky. Stats., section 2740; C. & O. Ry. Co. v. Perkins, 20 Ky. Law Rep. 608; Brown's Admr. v. L. & N. R. R. Co., 97 Ky. 228; Dilas' Admr. v. C. & O. Ry. Co., 24 Ky. Law Rep. 1347; C. & O. Ry. Co. v. See's Admr., 25 Ky. Law Rep. or page 1997; Galveston, &c., R. R. Co. v. Wink, 31 S. W. 326; L. & N. R. R. Co. v. Taaffe's Admr., 21 Ky. Law Rep. 64, 106 Ky.

Louisville & Nashville R. R. Co. v. Trower's Admr.

535; Hummer's Extx. v. L. & N. R. R. Co., 32 Ky. Law Rep. 1317; L. & N. R. R. Co. v. Cummins' Admr., 111 Ky. on page 339; Parkerson, Admx., v. L. & N. R. R. Co., 25 Ky. Law Rep. on page 2261; 3 L. R. A. (N. S.) 198, note, and cases cited; Greshem's Admr. v. L. & N. R. R. Co., 15 Ky. Law Rep. 599; Helm v. L. & N. R. R. Co., 17 Ky. Law Rep. 1004; I. C. R. R. Co. v. Willis' Admr., 97 S. W. 23; L. & N. R. R. Co. v. Mulloy's Admr., 91 S. W. 688, 28 Ky. Law Rep. 1113, 122 Ky. 219; L. & N. R. R. Co. v. Gilmore's Admr., 33 Ky. Law Rep. 76; Royster v. Southern Ry. Co., 61 S. E. 179; Storrs v. G. T. W. Ry. Co., 19 R. R. R. 198; Thompson on Negligence (1st Supp.), p. 27, sec. 186; L. & N. R. R. Co. v. Armstrong, 32 Ky. Law Rep. on page 256; 2 Thompson on Negligence, sec. 1786; Moody v. P. R. R. Co., 68 Mo. 470; Holland v. Mo. Pac. Ry. Co. 109 S. W. 20; Adams, Admr., v. L. & E. R. R. Co., 21 Ky. Law Rep. on page 988.

ROBERT HARDING for appellee.

E. M. HARDIN, E. V. PURYEAR and JOHN W. RAWLINGS of counsel.

## CONTRIBUTORY NEGLIGENCE.

Trower was not guilty of contributory negligence in going on to the main track after he paused and looked towards the approaching train. When he did so he was within a few feet of the main track and it was then at that moment of time 75 yards distant from him. He then had but a few feet to go to pass over the main track and reach the platform. It had 75 yards to come to strike him. He had the right to believe and did believe, that it was the local train and would stop, because it did so at that hour every day and was scheduled to stop for passengers and the mail sack at that time.

## AUTHORITIES CITED.

Nichols v. C. O. & S. R R. Co., 2 S. W. 181; I. C. R. R. Co. v. Murphy's Admr., 30 Ky. Law Rep. 96; M. & B. R. R. Co. v. McCabe's Admr., 30 Ky. Law Rep. 1010.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

The intestate, John E. Trower, was struck and

killed by a train on appellant's road at Mitchellsburg under these circumstances: He, as a volunteer, was carrying the mail bag for the postmaster to put it on the local mail train, known as No. 23, which was due to pass that station about 11:30 a. m. on a day in August. The post office was about 60 yards from the station. Mitchellsburg is an unincorporated hamlet, and the station is a flag station only, without tele-graph facilities. The station and the post office were on the same side of the railroad track. Between the station and the main track was a siding. Passengers and others having business with the train crossed from the depot to the opposite side of the main track, where a walk of screenings or broken rock was pro-vided. On the morning in question there was another train, called "first No. 23," which was running on the time of the regular 23; the first being a special train which had no occasion to stop at Mitchellsburg. There was a passenger for the local, and a flag had been put out to signal it to stop. It was running as second No. 23, and was some distance behind the first. When decedent heard a train whistle for the station, the signal being given some 500 or 600 yards before the station was reached, he started in a run, or trot, for the station so as to get there before the train did, and to be in position, presumably, to deliver the mail bag. He did not know, we may assume, that No. 23 was being run in two sections. Instead of passing to the west of the station, which was the public highway crossing, and which would have kept the approaching train in his view (it was going east), he passed on the east side of the station, which was not a public crossing, but which was used sometimes for passage by persons having occasion to cross the track. As he got to the edge of the side track, or upon it, according

to some of the evidence, which in either event gave him a clear, unobstructed view of the tracks looking west for perhaps half a mile, he paused, looked toward the approaching train, which was running very fast, and making considerable noise, the exhaust of the applied steam, and other noises such as a heavy rapidly moving train gives forth, he paused an instant, gathered himself together, as some of the witnesses put it, sprang or hastened his speed so as to get across before the train should arrive. At that moment the train was about 200 to 225 feet from him. The width of the side track was about five feet, and the distance between the two tracks about nine feet. Just as he got to the edge of the main track, the end of the pilot of the engine struck him, and he was killed. The speed of the train was from 20 to 40 miles an hour; the evidence varying between those figures.

Appellee based this suit to recover for the death of his intestate upon the negligence of the railroad company in running the special train upon the time of a regular train at a dangerously high rate of speed by the station. And upon that theory he recovered a verdict and judgment. Appellant's main defense was, as it is the principal ground urged for a reversal of the judgment, that the intestate was himself guilty of such negligence as that his estate ought not to recover damages for his death. And that is the only question which we find it necessary to examine. For the purpose of this case it may be conceded that first No. 23 was running by Mitchellsburg station at a speed, considered with reference to the rights of passengers and licensees at the station, that was negligent. It may also be conceded that the intestate was a licensee at the station on that occasion, and even in the use of the way of crossing which he used. It is also con-

ceded that nothing could have been done by those in charge of the train to stop it after the intestate was discovered to be in peril.  There is no conflict in the evidence, except as to the speed of the train, and that in testing whether the peremptory instruction should have been given we assume to be as stated by appellee's witnesses.  There were at least four eye-witnesses to the accident.  They all agree in their statements in all material points.  They were people who were sitting or standing about in the vicinity of the station.  They heard the train give the customary signals.  They heard it coming, and those who noticed the fact (and at least two or three did) say it was making the noise of a train running very fast.  They saw the intestate start with the mail pouch, were aware by his movements of his intention to cross the track ahead of the train, and were interested in watching to see whether he made it.  They all saw him pause and look as he emerged from behind the depot, and then gather himself as for a spring or sudden movement, and some of them saw him accelerate his speed till he was struck by the train, while others, when they saw his movement indicating he was going to try to cross the track, glanced back towards the approaching train to see what his chances were.  It was from the testimony of these latter that we are enabled to locate the distance of the train from the point of contact at the moment the intestate saw it and determined to make the dash to beat it.  He had about 20 to 25 feet to go, while the train had about 225 feet.

It is argued for appellee that the intestate mistook the train he saw for the regular local train No. 23, and thinking it was that train, and knowing that it customarily stopped at the station, thought that it would slow up enough before getting to the station to allow

him to pass in safety. The argument is not an un-reasonable conjecture; but it is only a conjecture. This train was carrying green signals on the engine pilot, indicating that it was a special. Whether the intestate knew what those flags signified is not shown. The train was running so fast that everybody who saw it and testified, some with the same, and none with better facilities than the intestate for judging of that fact, said that it was evident that it was not going to stop. No train stopped a that station except such as were flagged—that is, signaled by the station flag—and only certain ones were allowed to be flagged. While it may be that the intestate was mistaken as to the character of the train, and was misled into believ-ing it would stop, it may be, on the contrary, that he discovered its true character, and that it would not stop, but thought that he could get across the track before it came by. The latter inference is logically deducible from these circumstances: Every one who saw it saw that it was not going to stop. All who heard it formed the same conclusion, and they were all correct. If it had been regular 23, and had been going to stop, it would not at 225 feet distance have been coming at such high speed, nor emitting steam from the exhaust, as it was slightly downgrade from the west; nor, if it had been apparently going to stop, at 225 feet distance it would not have been neces-sary for intestate to have sprung forward on a run to cross ahead of it, as its speed in that event would not have been more than twice or three times his speed in a rapid walk, and he would have had ample time to have cleared the track without a sudden and unusual spurt of speed. It may be doubted whether there was evidence that the intestate thought the train was regular 23; but, whether regular 23 or not,

it was evident to all observers that it was not going
to stop at that station.

Appellee relies on two opinions of this court as
supporting the verdict. One is Illinois Central R.
R. Co. v. Murphy, 123 Ky. 787, 97 S. W. 729, 11
L. R. A. (N. S.) 352. Murphy's Case is unlike this.
Murphy was unaware of the approaching train that
struck him, while those on the train for quite a dis-
tance saw him, but did not slacken speed. We held
that running the train at high rate of speed through
a populous community—a city of more than 2,000
people, the railroad track being along or upon a
street—was negligence as to licensees or even tres-
passers whose presence was known, or should, from
the circumstances of constant use, have been antici-
pated. If Murphy had seen the approaching train,
and continued upon the track, his case would have
been more like this one than it is. The other case
cited is Nichols v. C., O. & S. W. R. R. Co. (Ky.), 2 S.
W. 181, 8 Ky. L. R. 519. It is very near like the case
at bar. The similar features are these: Nichols was
crossing the main track at a station in a hamlet, when
a regular passenger train was due there, and had been
flagged to stop for passengers. The location of the
depot buildings and tracks were substantially the
same as in this case. A special came along on the
time of the regular train, but without stopping. It
was running very fast. As Nichols attempted to cross
the track ahead of it it struck and killed him. Nichols
was entitled to the care due a passenger. The points
of dissimilarity are these: In Nichols Case the ap-
proaching train did not whistle, or give other warn-
ing of its coming. Nichols did not see it, or know
of its coming. At least, there was some evidence that
he did not, while other evidence was that he did. The

question was therefore one for the jury. There may be other differences between the facts of that case and this one; but we think the real question presented by and decided in the Nichols Case is necessarily dependent upon the fact that he was ignorant of the approach of the special train and of its character. In Nichols Case the court used this language: "In this instance those in charge of the front engine knew, or the law required them to know, that they were running on the time of the passenger train, or nearly so, that passengers were likely to be at this station and crossing the track, and that the train was likely to stop for them. Under these circumstances, the law declared that a known duty existed which required of those in charge of the engine which killed deceased to run it so as to avoid danger to human life." It was held to be willful negligence under such circumstances to run the special train at a high rate of speed by the station without warning or signal of its coming. As to whether Nichols saw the engine approaching, the court observed: "The testimony is conflicting as to whether deceased saw the engine coming or not. If he did, it is probable he did not notice but what it was the passenger train, which was just behind it, and mistook the one for the other." As we have said, those facts made Nichols case one for the jury, and, if those were the facts here, we would say the same of this case. The misunderstanding due to the opinion in Nichols case grows out of the remark of the court last quoted. It was assumed as the law in this case that if one saw a train coming, which was on the time of a regular train, and due to stop at that station, that he might as a matter of law rely upon its stopping and govern his movements by that assumption, although it was

erroneous in fact.   Whether he did or did not see
the train is a question of fact, which upon the con-
flicting evidence it was the sole province of the jury
to decide.   What its appearance was and what im-
pression on his mind it was calculated to make would
in that event have been also for the jury under the
court's instructions as what constituted contributory
negligence.   Under our practice the court instructs
the jury in general terms, leaving them to apply the
facts. Our practice gives the jury the greatest latitude
in applying the facts to the law as contained in the
instructions, so much so that it is not infrequent that
the jury's finding is wholly at variance with the
court's instructions, if they find that the facts exist
upon which the instruction covering contributory
negligence was based.   But we have no way of cer-
tainly knowing whether the jury found the facts to
be so, as their verdict is general.   If they find for
the plaintiff, no one can say whether they did not
find as a fact that the injured person did not see
the approaching train at all, whereas, in truth, they
may have believed that he did see it, but that under
the circumstances it was not negligence on his part;
that is, not such absence of the care "an ordinarily
prudent person would have exercised for his own
safety under similar circumstances."   The courts
have no way, under the present practice of giving
instructions in the most general terms, carefully
avoiding details, of regulating the application of the
law of contributory negligence.   It may be, and there
is a noticeable tendency in that direction, that more
stress should be laid in the instructions upon the
particular facts constituting such negligence.

   But, where there is no dispute as to the facts upon
which contributory negligence is based, there is

nothing to be submitted to the jury. If the facts
relied on as being contributory negligence are not
such, under the most favorable aspect for the de-
fendant, to constitute such negligence in law, then
the trial court decides that they do not, and refuses
to instruct upon that point, which eliminates it from
the case as a defense. But where the facts are not
disputed, and where they do constitute contribu-
tory negligence, the court must also decide that mat-
ter, and instruct accordingly. It is always for the
court to say what is the law, and the jury to find
the fact if the fact is disputed. But, the fact being
undisputed, the question is wholly one of law, in which
case it was not a question of law as to what he might
have thought from the appearance surrounding him.
What he had the right to think might have been a
question of law; but what he actually thought, never.
The remark quoted from Nichols Case was in the
nature of argument to show the probable nonexist-
ence of the fact relied on in defense as contributory
negligence. It was not intended to state it as a prop-
osition of law. If it should be the law that, when
one sees a train coming on the time of the regular
train, he may, without further investigation, and can
in spite of contrary appearances, rely upon the as-
sumption that it is the regular train, and that it will
stop where the regular train usually stops, and under
those assumptions put himself ahead of it upon its
track, in spite of the intelligence necessarily conveyed
by his senses, then the verdict in this case must stand;
otherwise not.

Let us review the decisions declaring the law upon
that point, and points so analogous in principle, as
to justify the application of the same rules.

In Greshem's Adm'r v. L. & N. R. R. Co., 24 S.

W. 869, 15 Ky. Law Rep. 599, a boy was run over and killed at Junction City where two railroads cross. The boy saw the train approaching. It was 70 yards away. It was a regulation by statute that all trains should stop before crossing another railroad. But this train did not stop. The boy in attempting to cross the track in front of it, just beyond the intersection, tripped and fell. Before he could get up, the train had run over him. Had it stopped as the law required it should, he would not have been hurt by it. The court seems to have laid some stress on the fact that the boy was a trespasser, and that the statutory duty of stopping the train at the crossing was not owing him. But the court used this language as to the right of the boy to rely upon appearances: ''Gresham evidently saw the train coming at a rapid rate of speed and close at hand, and, believing that he could make the crossing in safety, made the venture, and he would doubtless have succeeded but for the fact that he fell, which caused him to be overtaken and killed.''

In Helm v. L. & N. R. R. Co., 33 S. W. 396, 17 Ky. Law Rep. 1004, the injured person was a volunteer assisting the station agent. The station was a flag station. There were passengers to take the train at that station. The train failed to sound the whistle announcing its approach in time for the agent, or the one acting for him, to get across the track in time to display the signal for it to stop for the passengers. Nevertheless he attempted it, and was struck and injured. The court said: ''The appellant discovered the train was coming, and he negligently attempted to cross the track in front of it.'' No doubt he believed he could succeed. He misjudged the train's distance or speed. The verdict was for the defendant.

It was affirmed. But there was an error which would have reversed the judgment but for the fact that this court found from the facts, admitting all that appellant claimed as true, that he could not recover on account of his own negligence.

In Illinois Central R. R. Co. v. Willis' Adm'r, 123 Ky. 636, 97 S. W. 23, 29 Ky. Law Rep. 1187, Willis, a licensee, was upon a siding on the appellant's road. He saw or heard a train approaching and fearing it would frighten his horses, which he had left on the opposite side of the main track in charge of his little son, he hastened to cross in front of the rapidly moving train. It struck and killed him. This court said of his conduct: "Deceased evidently saw the train approaching. He thought he could cross over the track before it reached him. He made the venture, miscalculated the speed at which the train was approaching, and was killed." A peremptory instruction was ordered on the ground that his death was due to his own negligence.

In L. & N. R. R. Co. v. Taaffe's Adm'r, 106 Ky. 535, 50 S. W. 850, 21 Ky. Law Rep. 64, it was said: "It was the duty of the decedent, if he had notice of the approach of the train to the station, to exercise reasonable care to ascertain the proximity of the train to the station, and to be careful not to expose himself to any danger by walking upon or near the track upon which the train was approaching; and it was his duty if he heard the whistle, indicating its approach to the station, to be on the lookout for the same, and to keep himself out of danger."

The case of Craddock v. L. & N. R. R. Co., 16 S. W. 125, 13 Ky. Law Rep. 18, is very much like this case. Craddock was on the platform of the passenger depot. He heard a train whistle for the station, and

saw it coming. He started to cross the track in front of it, but at a point where he, a licensee, had the right to cross, or at least where the railroad company was bound to anticipate his presence. That train did not stop at that station. Some trains stopped there and some did not. Craddock testified that he thought it was going to stop. It was running at a negligent rate of speed—negligent as to Craddock, so held by this court, and it was added: "Yet this did not authorize the appellant to negligently throw himself in the way of it when he had ample warning of its approach, and then claim damages for any resulting injury." As to what would constitute "negligently throwing himself in the way" of the train the court cited: "He knew the train was approaching, and very near at hand. He had been warned of its approach by repeated blasts of the whistle, and it was in plain sight. He saw it coming, and yet when within from 16 to 60 feet of him he attempted to cross the track."

In Royster v. Southern Ry. Co. (N. C.) 61 S. E. 179, one who knew a train was coming and only a short distance away stepped onto the track in front of it after he had passed around a car without looking to see where it was. In the opinion it was said: "If, with an approaching train in view, a person undertakes to cross the track in advance of the train, he cannot recover for the injury sustained [citing authorities]. Nor does the fact that the train is running unusually fast make any difference, if the injured party knows that it is coming."

In Thompson on Negligence, 1 Sup. 27, section 186, it is stated: "One who recklessly encounters a known danger, and thereby directly contributes to his injury, cannot escape the effect of his negligence because the unknown negligence of defendant, which concurred

to produce the injury, made the danger greater than he supposed it to be. So one who recklessly encounters a known danger cannot escape the effect of this rule on the ground that his action was the result of an error of judgment.''

So long as we have the rule of law which makes contributory negligence a defense, instead of measuring the results of the negligence of the defendant and that of the injured party, and fixing liability in proportion of one to the other, the rule must be applied that he whose negligence is the proximate cause of the injury is the one at fault in law, and is the loser. Appellant's negligence in running its train too fast by the station was not the proximate cause of the intestate's death. His own negligence in going upon the track with knowledge of the defendant's negligence, or rashly or recklessly ignoring its negligence and ''taking chances,'' was the proximate cause of his injury; for, but for it, appellant's negligence would have been harmless as to him. In all the cases cited where the fact was undisputed that the injured party knew of the train's approach, and heedless of it, or miscalculating the results, went upon the tracks just in front of the train, a recovery was denied. From these authorities we gather the principle of law to be that it is such negligence for one to go upon the railroad track just in front of a rapidly approaching train, which he sees or knows to be then coming in. that for his injuries inflicted by it, he cannot recover from the railroad company, not because it was free from negligence, but because his own negligence was the immediate and nearest cause of his injury. We think the undisputed facts of this case bring it within that principle, and the peremptory instruction should have been granted.

The other questions discussed are not decided.

Judgment reversed, and cause remanded for a new trial under proceedings consistent with this opinion. Petition for rehearing by appellee overruled.