## Helton's Administrator v. Chesapeake & Ohio Railway Company, et al.

(Decided February 11, 1914.)

### Appeal from Boyd Circuit Court.

1. Railroads—Use of Tracks by Pedestrians—Care Required in Operating Trains. — Where the public generally, with the knowledge and acquiescence of a railroad company, have continually used its track for a long period of time, the presence of persons on the tracks where so used, must ordinarily be anticipated by the company in running its trains; and in approaching such place a lookout must be maintained by those in charge of its trains and warning given of their coming. But the operation of this rule has been confined to cities and thickly populated communities and has not been extended to rural or sparsely settled communities, although footpaths crossing the track and right of way in such community may be daily used by a large number of persons without interference from the railroad company. In such sparsely settled community, the railroad company is not required to anticipate the presence of persons on the track, keep a lookout or give signals of the approach of the train.

2. Negligence—Contributory Negligence—Injury to or Death of Person Suddenly Stepping in Front of Moving Train—Railroad Company Not Liable.—Where a pedestrian, whether a licensee or trespasser, is injured or killed in stepping upon the track in front of a moving train, under circumstances which gave those in charge of the train no reason to anticipate his doing so, and which put it out of their power, by the exercise of ordinary care, to stop the train before striking him, the act of such person in so stepping on the track, is such evidence of negligence as will bar a recovery.

3. Instructions—Peremptory Instructions—When Authorized.—To authorize a directed verdict for the defendant, it must appear that, admitting the plaintiff's evidence to be true, and every inference fairly deducible therefrom, he has failed to support his cause of action.

DINKLE & PRICHARD and D. M. HOWERTON for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

January 17, 1906, appellant's intestate, Delila Helton, while walking on the track of the Ashland Coal & Iron Ry. Co., at Summit, Boyd County, Kentucky, was run over and killed by a freight train belonging to and operated by the appellee Chesapeake & Ohio Ry. Co., and this action was instituted by Samuel Miller, the administrator of her estate, against the appellees, Chesapeake & Ohio Ry. Co., Grover Cleveland and Emanuel Booth, engineers, Pete Eagleton and Harry Frost, conductors, alleged to have been operating the train, to recover $30,000 damages for her death; it being alleged in the petition that her death was caused by the concurring negligence of the several appellees mentioned, in operating the train. By an amended petition it was alleged that the decedent was killed by the train near the crossing of a public highway over the railroad track and in front of the railroad station; and that on the occasion of her death the train, in approaching and passing the station, gave no signal of its coming, and, in addition, was running at an unusual rate of speed. By a second amended petition it was further alleged that the decedent, though on the railroad track, was seen by those in charge of the train, or by the exercise of ordinary care could have been seen by them, in time to have stopped the train before it struck and killed her. The averments of the original and two amended petitions were traversed by answer, which, in addition, pleaded contributory negligence on the part of the decedent. The affirmative matter of the answer was controverted of record.

On the trial of the case, November 29, 1912, appellees, at the conclusion of the appellant's evidence, moved the court to peremptorily instruct the jury to find for appellees, which motion was sustained and the peremptory instruction given; thereupon the jury, in obedience to same, returned a verdict in behalf of appellees, and from the judgment entered thereon this appeal is prosecuted.

The single question to be decided on the appeal is as to the propriety of the trial court's ruling in granting the peremptory instruction; but before undertaking its consideration, it will be necessary to state the salient facts connected with and surrounding the accident. It appears from the evidence that both the Ashland Coal & Iron Ry. Co. and the appellee Chesapeake & Ohio Ry. Co. operate their trains over the railroad in question, which

is exclusively owned by the Ashland Coal & Iron Ry. Co., but that only the trains of the latter are stopped at the station. The station does not consist of a depot building, but a mere platform or walk of cinders and planks, about five or six feet in width and forty or fifty feet in length, constructed and owned by the Ashland Coal & Iron Ry. Company. At the west end of the cinder walk and about thirty or forty feet from the point where the decedent was struck by the train, a public road crosses the railroad track and then runs some distance parallel with the railroad track on the north side thereof. The village of Summit has a population of less than 200, and there are only four or five houses in the immediate vicinity of the station, among them being the postoffice and one or two stores; other houses are located at a greater distance therefrom and within a radius of a half mile of the station. It further appears from the evidence that the decedent at the time of her death was residing with her brother-in-law, whose dwelling house abutted the railroad right of way on the south of the track, the gate leading into which was situated opposite the middle of the station platform. At six or six-thirty o'clock on the morning of her death the decedent left her brother-inlaw's house to go to a well situated on the north side of the railroad track and county road, which there parallelled the track. After filling the bucket which she carried with water from the well she started upon her return to the house, and in doing so walked in the county road for a short distance west and then got upon the railroad track at a point nearly opposite the east end of the platform, and was attempting to go diagonally across the track in the direction of her brother's gate, when she was struck by the train on the main or south track at a point opposite the middle of the platform. The train by which she was. killed was going west and therefore ran up behind the decedent and struck her in the back.

It also appears from the evidence that at the time of being killed, the decedent was taking a route across the railroad track which the public were much in the habit of using. Some witnesses introduced in appellant's behalf testified that they did not hear the train whistle before it struck the decedent, but two others, one being the posmaster at Summit and the other a resident, agreed in the statement that they heard the whistle when the train was within half a mile of the station, and yet an-

other witness, who was standing on the porch of his resi-
dence and saw the train pass, testified that it gave two
blasts of the whistle when it got within sixteen or seven-
teen rails' length, or about 500 feet, of the road cross-
ing; but none of these witnesses was able to recollect that
there was any ringing of the engine bell. All agree, how-
ever, that they heard the roaring noise made by the run-
ning of the train before it came in sight and until it
reached the station, and while several of them testified
that it was running fast or "tolerably" fast, none of them
stated that it was running at an unusual rate of speed.
The only eye-witness to the accident was S. A. Creech,
who was at the station awaiting the Ashland Coal & Iron
Ry. Co.'s train which was following immediately behind
the train by which the decedent was killed, as he expected
to take passage thereon to go to his uncle's in Morgan
County. Creech testified that he heard the noise made by
the approaching train, but if it sounded the whistle or
rang the bell, neither of these signals was heard by him.
He saw the decedent cross the county road with the
bucket of water in her hand, and we quote from his testi-
mony what he had to say of the accident:

"Q. Did you notice the woman when she came from
behind the house? A. Yes, sir. Q. When she came
out did she step onto the railroad track? A. Well, she
got on it as soon as she got to it. Q. Just as soon as
she got to the track she stepped on the track? A. Yes,
sir. Q. And then what track was she walking on, east
or west, when she was struck? A. She was walking
more in a west direction. Q. Walked west? A. Yes,
sir. Q. And in the center of the track? A. Yes, sir,
that is where she was when the train struck her. Q.
From the time she got on the track did she continue to
walk in the center of track—west direction? No, sir,
just walked 'Kinder bias' like that—diagonally across
it. Q. About how many steps did she take on the track
before she was struck? A. I don't know that. Some-
thing like two or three feet in between the two tracks.
Q. When she first stepped out on the track how near
was this train to her? A. Well, I guess it would be in
20 feet of her. Q. Running fast or slow? A. Toler-
ably fast. Q. Did you or your uncle try to attract the
attention of the woman? A. My uncle threw up his
hands and hollered something, but as she was stepping
on—the whole thing occurred just as she stepped upon

the track—it was within 20 feet of her—the whole thing occurred just in an instant.''

Giving to the appellants evidence all the weight to which it is entitled, it nevertheless failed to show that the death of the decedent was attributable to the negligence of the appellee Chesapeake & Ohio Ry. Co., or that of its servants in charge of the train by which she was killed. The train was running on its schedule time and not at a rate of speed so fast as to be unusual, and it is not to be overlooked that it passed the Summit station at daylight in the morning and earlier than passengers or persons would be expected to be at the station or on the railroad. Besides, the train was one which was not accustomed to stop at the station, and this, as well as the fact that it was then due to pass the station must be presumed to have been known to persons residing in the village, therefore there was nothing in the existing circumstances to cause those operating the train to anticipate the presence of persons on the track. It is by no means clear from the evidence that the train, in approaching the station failed to give the usual signals of its coming, and, if it whistled within a half mile of the station, as testified by two of appellant's witnesses, or within sixteen or seventeen rails' length of the crossing at the end of the platform, as testified by a third witness, it would seem that these signals ought to have been sufficient as a warning of its coming to any person who might happen to be upon the highway crossing, where they had the right to travel, or at the station. If, however, it were manifest that no signal was given by the train there was nothing in the locality or time of the accident to have given those in charge of the train cause to anticipate the decedent's presence upon the track. Counsel for appellant seem to rest their contention that appellees were charged with the duty of maintaining a lookout for the decedent and to give warning of the train's approach, upon the grounds that the place of the accident was close to a public crossing, at a place accustomed to be used by the public, and at a station of the Ashland Coal & Iron Ry. Co. In our opinion the rule contended for does not apply to the facts of this case. Upon the contrary, we have held that in a sparsely settled locality like Summit the mere fact that a railroad company's tracks at and near the place of the accident are accustomed to be used by the public for the purpose of travel does not of itself require that those in

charge of trains should keep a lookout for or anticipate the presence of persons on the track. One of the cases in which we so held is that of Chesapeake & Ohio Ry. Co. v. Nipp's Admrs., 129 Ky., 49, in the opinion of which it is said:

"It has been ruled by this court that where the public generally, with the knowledge and acquiescence of the railroad company, have continually used the tracks for a long period of time, the presence of persons on the track at the point where it is so used must be anticipated by the company in running its trains, and it owes to persons thus habitually using its right of way the duty of giving warning and keeping a lookout. Davis v. L. H. & St. L. R. Co., 122 Ky., 528; McCabe's Admx. v. Maysville & Big Sandy R. Co., 28 R., 536; L. & N. R. Co. v. Redmon's Admx., 122 Ky., 385. But the operation of this rule has been confined to cities and thickly populated communities, and has not been, and will not be, extended to rural communities or sparsely settled regions, although footpaths crossing the track and the right of way may be used by a large number of persons each day. In the country districts traversed by lines of railway it is no uncommon thing for numbers of persons in going to public places, such as school houses, churches, stores, and the like, to use paths or ways that cross the railroad tracks, but that are not private or farm crossings, and also to travel upon the right of way and tracks of the company. It may be also conceded that these persons use the right of way and tracks of the company with its acquiescence, in the sense that it does not interfere with their use, or take steps to prevent it; but this use by individuals of the tracks and right of way of railroad companies in places of this character does not convert them from trespassers into licensees. Nor does it impose upon the company any duty of lookout or warning. Persons who thus use the tracks and right of way do so at their peril. They are trespassing upon dangerous premises, and assume the risk of any accident that may befall them by passing trains. Gregory v. L. & N. R. Co., 25 R., 1986; C. & O. Ry. Co. v. See's Admr., 25 R., 1995; Brown v. L. & N. R. Co., 97 Ky., 228; C. & O. Ry. Co. v. Perkins, 20 R., 608; L. & N. R. Co. v. Redmon's Admx., 122 Ky., 385."

"It is therefore not material whether the train that killed Nipp gave the statutory or any signals of its approach to the public crossing; nor does the speed at which

the train was running enter into the case. Upon the facts presented by this record, the trial judge should have granted the request of appellant and peremptorily instructed the jury to find for it.''

For the reasons stated in the case, supra, we conclude that the decedent when struck by the train, considering the time and place of the accident, was a trespasser, and this being so, appellant's servants in charge of the train owed her no duty other than to use ordinary care to avoid injuring her after the discovery of her peril; and as, according to Creech's testimony, she came from behind a store and immediately reached and stepped upon the railroad track within twenty feet of the approaching train, her presence on the track was not discovered, and could not by ordinary care have been discovered, by them in time to prevent the train from striking her, they were not guilty of negligence; and on this ground alone the peremptory instruction was authorized.

It was also authorized upon the further ground that, according to the evidence the decedent was herself guilty of negligence which so contributed to her death that but for the same it would not have occurred. In other words, the evidence conclusively shows an absolute failure upon her part to take any precaution for her own safety. If she did not hear the whistle of the train there is no apparent reason for her not hearing the noise made by the running of the train, as it was heard by every witness who testified in the case. In addition to her failing to give heed to the noise made by the approaching train, she stepped upon the track when the train was within twenty feet of her, which not only made it impossible for those in charge of the train to have discovered her peril in time to prevent her death, but also made it impossible for her, after discovering the train, to escape the danger into which she had negligently thrown herself by getting off the track before the train got to her. There can be no doubt of these facts, because Creech, appellant's only witness who saw the accident, testified that this was the way it happened. There is, therefore, no escape from the conclusion that the decedent's death was caused solely by her own negligence. The foregoing facts bring this case clearly within the rule announced in L. & N. R. Co. v. Trowel's Adm'r., 131 Ky., 589; Helm v. L. & N. R. Co., 17 R., 1004; Ill. Cent. R. Co. v. Willis' Adm'r., 123 Ky., 636; L. & N. R. Co. v. Taaffe's Admr., 106 Ky., 535; Crad-

dock v. L. & N. R. Co., 13 R., 18. In each of these cases it was held that the act of the person, injured or killed by the train, in stepping upon the track in front of it, under circumstances which put it out of the power of those in charge of the train to stop it before striking them, was such evidence of negligence on their part as barred a recovery, without regard to whether they were licensees or trespassers.

The rule in question is well stated in Thompson on Negligence, 1st Sup. 27, sec. 186, as follows: "When one recklessly encounters a known danger, and thereby directly contributes to his injury, he cannot escape the effect of his negligence because of the unknown negligence of defendant, which concurred to produce the injury and made the danger greater than he supposed it to be. So, when he recklessly encounters a known danger he cannot escape the effect of this rule on the ground that his action was the result of an error of judgment:" The fact that the decendent was struck by the train near the crossing furnishes no stronger ground for a recovery than if there had been no crossing. In point of fact, she was thirty or forty feet from the crossing when overtaken by the train and was not attempting to reach or use the crossing, but was walking diagonally across the railroad track in a different direction. In L. & N. R. Co. v. Redmon's Admx., 122 Ky., 385, Redmon when killed was within a few feet of a public crossing and near a cattle guard which separated the highway from the railroad company's right of way. As to the effect of his being so situated the court said:

"According to the undisputed facts deceased was not upon the public road or street of New Haven when injured. It is true, he was at the time near a road or street of the city where it crosses the railroad track, but nevertheless on the right of way and track of appellant, which the public had no right to use, and to prevent the use of which the cattle guard was constructed. * * * While it is the duty of those in charge of trains, in approaching a public crossing, whether in a city or the country, to give the customary and necessary signals for the protection of persons having the right to use such crossing, this duty need not be performed for the benefit of trespassers who may be using the track elsewhere. In Shackelford's Admr. v. L. & N. R. R. Co., 84 Ky., 43, it is said: 'Railroad trains must give the customary signals at public

places or public crossings. The failure to do so is negligence, but this is required for the safety of passengers, trainmen, and the public using, and who have the right to use, the track at such public ways, and not for the purpose of protecting those, who, as trespassers, may be crossing or using the tracks elsewhere. The instances are numberless upon every railroad of persons living along it, and having to and being in the habit of crossing the track to pass from the dwelling to the outbuildings, or vice versa; and to require the companies in all such cases to signal the approach of their trains and to presume and guard against the presence of persons upon the track would not only be unreasonable, but detrimental to public travel.' '' Davis' Admr. v. C. & O. Ry. Co., 25 R., 342; L. & N. R. Co. v. Vittitoes' Admr., 19 R, 612.

The rule for determining when the giving of a peremptory instruction is admissible is thus stated in Haley's Admr. v. C. & O. Ry. Co., 157 Ky., 208: ''To authorize a directed verdict for the defendant it must appear that, admitting the plaintiff's testimony to be true, and every inference fairly deducible therefrom, he has failed to support his cause of action.'' C. N. O. & T. P. Ry. Co. v. Rule, 142 Ky., 694; Southern Ry. in Ky. v. Goddard, 121 Ky., 567.

The application of the foregoing rule to the facts of this case removes any doubt as to the propriety of the circuit court's ruling in granting the peremptory instruction.

Judgment affirmed.