## Chesapeake & Ohio Railway Company v. Ransom's Administrator.

(Decided May 13, 1915.)

### Appeal from Lawrence Circuit Court.

Railroads—Accidents at Crossings—Contributory Negligence of Person Injured.—There can be no recovery for the death of a person killed by a train in an attempt to cross ahead of the train when the injured person knew of the approach thereof. But unless the evidence as to this knowledge is uncontroverted the issue of contributory negligence is for the jury.

WORTHINGTON, COCHRAN & BROWNING, M. C. KIRK and F. T. D. WALLACE for appellant.

JOHN W. WOODS and A. O. CARTER for appellee.

Opinion of the Court by Judge Hannah—Affirming.

R. Ransom, sixty-nine years of age, and a resident of the immediate vicinity, was struck and killed at Keyes Creek crossing in Normal, Boyd County, by a Chesapeake & Ohio Railway Company train; and this action to recover damages for the negligent killing of Ransom was instituted in the Lawrence Circuit Court against the railway company by the administrator of his estate. From a verdict and judgment against it in the sum of sixteen hundred dollars the railway company appeals.

Appellant urges but one ground for the reversal of the judgment appealed from, and that is, that the trial court erred in denying its motion for a directed verdict because of the contributory negligence of the decedent expressly waiving all other errors. It is conceded by appellant that there is the usual conflict of evidence in respect of failure to give statutory warnings, and that the scene of the accident was one where the presence of persons on the crossing was required to be anticipated.

It appears from the evidence that at Keyes Creek crossing, appellant railway company has three tracks running east and west; that parallel with these tracks and south of them, is the track of the Ohio Valley Electric Railway Company, an interurban street car line; that south of the street car line and parallel with it is a county road.

For several minutes prior to the accident Ransom had been at the south terminus of this crossing, in the county road, playing with some boys. He then left them and started over the crossing. He crossed the street railway track and the first and second tracks of appellant railway company, and while crossing the third track thereof, he was struck by the train and killed.

The train which struck Ransom consisted of a locomotive, three cars and a caboose. It was running at the rate of about thirty miles per hour. The crossing over which Ransom was passing proceeds diagonally across the tracks, and Ransom's back was partly toward the train, which was approaching from the east.

As to the statutory signals the evidence is conflicting. The fireman could not say whether the whistle was sounded or not; but was sure the bell was ringing. The engineer admitted that he was 1,200 feet east of the crossing when he sounded the whistle; but the weight of the evidence is that the whistle was not sounded, that

the bell was not ringing, and that the headlight on the engine was not burning. The time of the accident was just at dusk on the evening of October 6, 1913.

It is well settled in this State that there can be no recovery for the death of a person who is killed in an attempt to cross ahead of a train which he knows to be approaching. Helton's Admr. v. Ches. & Ohio Ry. Co., 157 Ky., 380, 163 S. W., 224; L. & N. v. Trower's Admr., 131 Ky., 589, 115 S. W., 719; Edwards' Admr. v. Ches. & Ohio Ry., 108 S. W., 303; Ill. Cent. R. R. v. Willis' Admr., 123 Ky., 636, 97 S. W., 21, 29 R., 1187; L. & N. v. Taaffe, 106 Ky., 535; Helm v. L. & N., 17 R., 1004; Craddock v. L. & N., 13 R., 18; Greshiem's Adm. v. L. & N., 24 S. W., 869.

And it is contended by appellant that Ransom knew of the approach of the train by which he was struck; that this was established conclusively by the testimony; and that therefore the trial court should have directed a verdict in its favor.

Appellant introduced three witnesses by whom it claims to have shown that Ranson did in fact know of the approach of the train.

G. F. Hanes, one of these witnesses, testified that he was standing at the north side of the crossing, and saw Ransom coming across in his direction; that Ransom was within ten feet of the witness when the train struck him; that he, the witness, was himself waiting for the train to pass; that as Ransom stepped on to the middle track, he "cast his head kinda over his shoulder, a slight direction, up the track." However, in view of the fact that the preponderance of the evidence seems to show that the whistle was not sounded, that the bell was not ringing, that the headlight of the engine was not burning, and in view of the further fact that no witness mentions the noise made by the train (we assume, however, that it did make some), we do not feel that this testimony establishes conclusively that Ransom knew of the approach of the train.

Annie Stevens, another of these witnesses, lived with her mother on the south side of the county road, right at Keyes Creek Crossing; the map shows the distance from the house to where Ransom was struck to be about 125 feet. She said she was sitting with her mother on the porch; that she saw a man start across the tracks; and later, on re-direct examination, in answer to a ques-

tion in which no inquiry was made to as whether Ransom looked at the train, she volunteered the statement that he looked at the train two or three times as he went across. She stated that she did not then know who it was, because it was so dark; yet she admits that she was well acquainted with Ransom, and they were, in a sense, neighbors. If it was so dark that she was unable to recognize a neighbor, it is difficult to understand how she could say so positively that he looked two or three times at the train.

The other witness, Mrs. M. J. Stevens, mother of Annie Stevens, testified that as Ransom got almost to the track where he was killed, he looked toward the train; but she, like her daughter, did not know at the time that it was Ransom, because it was so dark, although she was also well acquainted with him.

On the other hand, Tom Hunt, one of the boys with whom Ransom had been playing before he started across the tracks to go to his home, stated that he had his eyes on Ransom from the time he started across the tracks until he was killed; and that if Ransom ever looked either up or down the track, witness did not see him.

It may be that the preponderance of the evidence shows that Ransom did know of the approach of the train; but unless the proof on that issue is uncontraverted, it is for the jury.

The trial court, therefore, properly submitted to the jury the question of whether Ransom was guilty of contributory negligence, but for which his death would not have occurred. L. & N. v. Miller, 134 Ky., 716, 121 S. W., 648; L. & N. v. McNary, 128 Ky., 420, 108 S. W., 902, 32 R., 1272, 17 L. R. A. (N. S.), 224, 129 A. S. R., 308; Ches. & Ohio Ry. v. Warnock's Admr., 150 Ky., 74, 150 S. W., 29, C., N. O. & T. P. Ry. Co. v. Winningham's Admr., 156 Ky., 434, 161 S. W., 506.

Judgment affirmed.