# Chesapeake & Ohio Railway Company et al. v. Hobson's Administrator.

(Decided February 16, 1932.)

(As Modified on Denial of Rehearing June 21, 1932.)

BROWNING & DAVIS and KIRK, KIRK & WELLS for appellants.

E. J. PICKLESIMER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In this action by George Hobson's administrator against the Chesapeake & Ohio Railway Company and R. D. McDonney, its engineer, to recover damages for his death, the jury returned a verdict in his favor for $5,000, and the defendants appeal.

The facts are these: Allen, an incorporated town of about 350 inhabitants, and a station on the Chesapeake & Ohio Railway, is located in Pike county, near the mouth of Beaver Creek, a tributary of the Big Sandy river. A branch line, known as the Beaver Creek road, joins the main line of the Chesapeake & Ohio Railway just below the mouth of Beaver creek. This point is known as the junction, and just below the junction at a distance of 1,234 feet from the depot platform at Allen is a telegraph office where the trainmen receive their orders. Between the junction and the depot is a railroad bridge on which, for its entire length, there is a foot-bridge 4½ feet wide, with handrails to prevent persons from falling from the bridge. George Hobson, a son of the deceased, lived on the hill just above the railroad, and a short distance from the lower end of the bridge. Leading from his home down the hill to the railroad near the end of the bridge is a road. After crossing the foot-bridge there is a path on the north or left-hand side of the railroad track, and near the ties. On reaching the switch stand, which is about 216 feet west of the depot, the path ends on the left-hand side of the railroad and crosses to the right-hand side. At the switch stand there are four tracks, two going to the depot, one to the Hampton Wholesale Grocery, and the other extending around

to the right of the depot, and known as the house track. There was evidence that the pathway in question was used daily by 200 to 250 persons to go to and from the depot. On the day of the accident, deceased, who lived east of the town of Allen, was visiting his son, John Hobson. About 11 o'clock a. m. he left the home of his son for the purpose of taking train No. 36, and returning to his own home. After going down the road and crossing the footbridge, he proceeded along the pathway toward the depot. While in the pathway, and crossing the tracks at the switch, he was struck by train No. 36 and killed.

According to John Hobson, he heard the engine whistle about a half-mile below the junction. His father knew it was about time for the train, wanted to get over to the station in time to take it, and was walking pretty fast. After the train whistled for the junction, it never whistled any more, and the bell was not ringing. The train was not making any noise, but was coasting into the station.

Charlie Clevinger, who claims to have seen the deceased before he was struck, testified that he was in the path that crossed the tracks, and just stepped off the track when the train struck him, that he heard the train whistle for the junction, did not hear any further signals, and that the bell was not ringing. Leman Clevinger testified that he saw deceased travel for about 60 feet before the train hit him. The deceased was walking real fast until he came upon the track. He never heard the train whistle any more after it whistled for the junction, and never heard the bell ring. Just before deceased was struck, he saw him turn around a little and catch a glimpse of the train. When he saw deceased the first time, the deceased was coming up the path. The second time he was running across the track. By that time the train was getting pretty close.

"He just kindly jumped up on the track and run kindly across when he glanced back and seen the train and then made a dive to leave the track."

T. L. Compton was at the Allen station on W. F. Compton's music store porch, and saw the deceased on the track just before he was struck by the train. He

heard the train whistle for the junction, but it never whistled after that, nor was the bell ringing. The train was just drifting into the station, not making any noise. There was further evidence that the train was going about 25 or 30 miles an hour, and that the engineer was seated in the cab apparently reading some papers.

On the other hand, Mrs. G. B. Auxier, a witness for the defendants, testified that she saw the deceased going to catch the train, and he was walking awfully fast. After the train whistled, he looked back and ran faster. S. Hatton, fireman on the engine, testified that the whistle blew for the junction which was about two-tenths of a mile below the depot. The blocks being against them, he announced it to the engineer, and he answered the block with two blasts of the whistle. He got his orders at the telegraph station from the hoop, and held them until he got to the station. After he received his orders and got back on the engine, he was looking ahead. He never saw Mr. Hobson on or about the track. There was a curve there. He could not see an object 30 or 40 feet ahead unless it was on his side. R. D. McDonney testified that the train was running 20 or 25 miles an hour at the time of the accident. He blew one long whistle at the post below the junction, and called the fireman's attention to the block. After attention had been called to the block, he answered with two short blasts of the whistle. The train then was just west of Beaver Junction. Just before he came to the bridge, he blew the standard road crossing signal. There was a space of 13 seconds from the time of the first whistle until the last one ceased. The train drifted around the curve. He was in his usual position looking through the cab window preparing to make the Allen stop. He was on the outside, on the right-hand side of the locomotive. His view was obstructed by the curve. He was not reading his orders, and had no paper of any kind in his hand. Going around the curve his view was obstructed by the engine. He never saw the deceased on the occasion of the accident.

It is conceded that there was sufficient evidence of the user of the railway tracks by the public at the time and place of the accident to authorize the submission to the jury of the question whether or not the decedent was a licensee to whom the railway company owed the usual precautionary duties of maintaining a lookout, of operat-

ing the train at a reasonable rate of speed, and giving warning of its approach. It is also conceded that there was sufficient evidence of the company's failure to perform these duties to make the question of negligence one for the jury. But the point is made that the decedent was guilty of contributory negligence as a matter of law, and the motion for a peremptory instruction should have been sustained. The argument is that decedent left his son's home for the purpose of taking train No. 36; that he was hurrying to the depot in an effort to reach there before the train arrived; that before crossing the tracks he looked back and saw the train coming; and therefore the case is one where he attempted to cross with knowledge of the fact that the train was approaching. It is the rule that one who undertakes to cross in front of a train that he knows is approaching is guilty of contributory negligence as a matter of law. Louisville & N. R. Co. v. Fentress' Admr., 166 Ky. 477, 179 S. W. 419; Louisville & N. R. Co. v. Trower's Admr. 131 Ky. 589, 115 S. W. 719, 20 L. R. A. (N. S.) 380; Louisville & N. R. Co. v. Taylor's Admr., 169 Ky. 435, 184 S. W. 371; Barrett's Admr. v. Louisville & N. R. Co., 206 Ky. 662, 268 S. W. 283.

It is true that Mrs. Auxier testified that the decedent looked back toward the train before going on the track, but there was other evidence to the effect that he did not turn his head in the direction of the train until he was in the middle of the track. The evidence being conflicting, the question whether decedent knew of the train's approach was for the jury. Indeed, the question of contributory negligence, under circumstances similar to those here presented, is usually one for the jury, to be determined in the light of all the circumstances. Chesapeake & Ohio R. Co. v. Warnock's Admr., 150 Ky. 74, 150 S. W. 29. As the licensee has the right to act on the assumption that a warning will be given, failure to warn is a potent circumstance in determining the question. Cincinnati, N. O. & T. P. R. Co. v. Winningham's Admr., 156 Ky. 434, 161 S. W. 506. There being evidence that no warning was given, and that the train was running at the rate of 20 or 25 miles an hour, and was coasting into the station, it cannot be said that decedent was guilty of contributory negligence as a matter of law. Chesapeake & Ohio R. Co. v. Williams' Admr., 179 Ky. 333, 200 S. W. 451.

Appellant offered the following instructions:

"Instruction B: Although the jury may believe and find from the evidence that the agents, servants and employees of the defendant company were negligent in the operation of its train at the time the decedent was struck near Allen Station, yet if the jury further believe and find from the evidence that the said decedent, George Hobson, on the occasion in controversy was negligent and that his negligence contributed to his injury and death, to such an extent that but for which negligence he would not have been injured, and killed, then, and in that event the law is for the defendant, and the jury will so find."

"Instruction C: The court instructs the jury that it was the duty of the decedent, George Hobson, in approaching the defendant's depot mentioned in the evidence, to use such care as may usually be expected to be used by an ordinarily prudent person to learn of the approach of defendant's train, and to keep out of its way, and if the jury believes from the evidence that he failed to exercise such care and but for this would not have been injured and killed, then the law is for the defendant and the jury will so find."

"Instruction D: The court instructs the jury that altho they may believe and find from the evidence that the defendant's agents, servants and employees in charge of said train at the time of the injury and death of the deceased, failed to use ordinary care at said time to prevent said accident as defined in Instruction No. 1, and if the jury further believe and find from the evidence that at said time the deceased was a safe distance from the tracks of the defendant and knew of the approach of the train, or by the use of ordinary care could have known same and with this knowledge undertook to cross over the tracks of the defendant ahead of its passenger train, the decedent, George Hobson, assumed the risk of danger, then the law is for the defendant and the jury will so find."

Instruction A:

"The court further instructs the jury that if said decedent, George Hobson, knew, or by the use of ordinary care could have known of the approach

of defendant's train at the time and on the occasion referred to in the evidence, and attempted to cross over said defendant's track in front of its train in such close proximity to said train that it was impossible for the employees operating said train to stop the train or prevent injuring him, then the law is for the defendant and the jury will so find."

The court refused to give instructions B, C, and D, but gave instruction A, and also a general instruction on contributory negligence to the same effect as instruction B. It now is insisted that in the giving of instruction A the trial court placed an unwarranted qualification upon the effect of decedent's knowledge of the train's approach in making that defense depend upon the further finding that the train was in such close proximity to decedent that the accident could not have been prevented, and that in lieu of instruction A the court should have given instruction C or instruction D. The situation was this: Appellant offered four instructions presenting in different language the defense of contributory negligence. This in effect was a request to the court to give one of those instructions. The court did give an instruction to the same effect as instruction B and also instruction A, one of the offered instructions. Beginning with the case of Clift v. Stockdon, 4 Litt. 215, this court has uniformly ruled that a party cannot predicate error on instructions given at his own request. Carr v. Hanners, 232 Ky. 670, 24 S. W. (2d) 570. For this reason appellant cannot now complain of any defect in instruction A, which it induced the court to give, and insist that the court should have given one of the offered instructions bearing on the same question.

Judgment affirmed.