## Louisville Ry. Co. v. Offutt's Adm'x.

(Decided Dec. 13, 1932.)

PETER, LEE, TABB, KRIEGER & HEYBURN for appellant.
LUKINS & JONES, H. C. T. WHITTENBERG and J. D. INMAN for appellee.

Opinion of the Court by Judge Clay—Affirming.

This is an appeal from a $4,000 judgment in favor of the administratrix of Basil Duke Offutt, deceased.

Offutt, a police officer of the city of Louisville, was in charge of traffic at 10th & Broadway. Tenth street runs north and south, and Broadway runs east and west. At their southwestern intersection is located the Union Station. In front of the station on Broadway are the street car tracks of the Louisville Railway Company. On each side of these tracks, and about 2 feet therefrom, is a concrete platform about 80 feet in length and 4½ feet wide. No traffic is allowed between the platforms except the street cars and passenger busses belonging to the railway company. Between 11 and 12 o'clock on February 11, 1931, one of the company's busses coming from the west started through the safety zone and along the south side tracks. Just about the time the bus was entering the west end of the safety zone an automobile was driven in violation of the traffic regulation into the safety zone from the other end. Offutt, who was in uniform, and flourishing a stick, motioned to the offending driver to stop, and stepping from the platform was struck by the bus and died from his injuries.

The first witness for appellee was George E. Flynn. The first he saw of the accident was just as the bus hit Offutt. After striking him the bus ran 15 or 20 feet, and the front wheels were right up against him. F. P. Stults, whose office was at the northeast corner of the Union Station building, was attracted by the noise of the impact. He saw Offutt's body in the air, and then roll over and hit the concrete. When Offutt's body came to rest it was practically in front of the window of his office. On his arrival, R. C. Walling, a traffic officer, found Offutt's body about 10 or 12 feet from the east end of the loading platform, and the bus was standing 3 or 4 feet to the west. H. Wise who was driving a car alongside of the bus, but outside of the safety zone, saw Offutt walk from the south curbing straight over the concrete platform, and saw the bus knock him 12 or 14 feet. The front wheels of the bus then ran upon his stomach, stopped, and backed off. The bus was going 18 or 20 miles an hour. He did not hear the horn blown, or the brakes applied, until after Offutt was struck. He was a little hard of hearing. According to Joe Tillman, Sr., the officer hardly made one step until the bus

hit him, threw him 10 or 15 feet, kept on going, and stopped on his stomach. He did not hear the horn sound, or the brakes applied before the accident. Albert Hale, a colored newsboy, looked around just in time to see the bus hit the officer and knock him about 15 feet through the air. He guessed the bus was going about 35 miles an hour. He was not a very good judge of speed, but was a pretty good judge of distance, and if you had good brakes you could stop a bus in 15 feet. J. M. Smith saw the bus back off the officer's body. According to Arthur S. Klingman, the officer had been letting people to and from the sidewalk. He saw the officer step off the platform and hold up his billy to stop the car that had come into the safety zone without right. The bus was about 8 feet away. The officer stepped off on his left foot, took one step on his right, and was starting his third step when he was struck. The bus threw him 6 or 8 feet. The brakes were on when the officer was struck, and he could not say whether the bus driver blew his horn or not. "The least bit to the left" side of the bus struck the officer. According to Leonard Colvin, an automobile mechanic, who held a department of commerce license, a bus weighing 6,000 pounds, equipped with air brakes and going 15 miles an hour, could be stopped approximately in 10 feet. If going at 10 or 11 miles an hour, it could be stopped in 6 or 7 feet. Witness admitted that the condition of the street and the weight of the bus had something to do with it, and that it took a fraction of a second for the driver to put his foot in operation.

On the other hand, E. R. Taylor, the driver of the bus, testified that it was a bright, clear, dry day, and that the brakes and everything else were in good shape. As he approached the loading station he sounded his horn. He had not gotten any signal to stop. There were several people standing in the bus, but they were not out front so as to obscure his vision. The bus did not have an air brake, but had a Booster brake. The first he saw of the officer was when he stepped right in front of the bus about 5 or 6 feet away. He got on his brake as quickly as he could, and tried to stop. The bus was going about 15 miles an hour. After striking the officer he ran 5 or 6 feet. He knew that a traffic officer was stationed at the intersection, and it was the officer's duty at times to be in between the two loading platforms. When he first saw the officer he was standing on the loading zone a good distance away. The officer was in

full uniform and plainly visible. He saw the other automobile come into the safety zone and knew it was not allowed to enter. He also knew that it was Officer Offutt's duty to prevent people from coming into the safety zone. He never intended to stop at 10th street. He did not apply the brakes until the officer stepped from the platform. He blew his horn several times as he came into the safety zone. The officer made no attempt to stop the other automobile until he stepped off the loading platform. He did not see the officer 10 feet away, but admitted signing a statement to that effect. Going about 10 or 15 miles an hour it would take 18 or 20 feet to stop the bus. When George Gwyn first saw the officer he was standing on the platform and was not moving. When the officer stepped from the platform it looked to him like the officer was not over 5 or 6 feet away from the bus. Charles Blythe saw the officer standing on the safety zone. When the officer stepped off, the bus was 5 or 6 feet from him. The bus ran probably 8 feet after striking the officer. Jasper Powell was in the bus. No one was standing in the front part of the bus at the time. When the officer stepped from the platform, the bus was a few feet away, and ran 5 or 6 feet after it struck him. He guessed the bus was going 10 or 12 miles an hour. Daniel Cummings, a passenger on the bus, saw the officer step off the platform, and estimated the speed of the bus at not over 10 miles an hour. He could not exactly estimate the distance the bus ran after striking the officer. On cross-examination it was shown that he had made a written statement to the effect that the officer stepped off the loading platform into the street about 15 or 20 feet in front of the bus, and that the bus was going about 15 miles an hour. Ernest Beeler, another passenger on the bus, saw the officer step from the platform about 10 feet in front of the bus, and estimated that the bus ran 3 or 4 feet after it struck him. He did not notice whether the horn was sounded or not.

In view of the amount of public travel at 10th and Broadway in the city of Louisville, and of the large number of persons entering or leaving the safety zone for the purpose of getting on or off the street cars and busses, it cannot be doubted that the place of the accident was peculiarly one where it was the duty of the driver of the bus to keep a lookout, to operate the bus at a reasonable rate of speed, to give reasonable warning of its approach, and to exercise ordinary care to pre-

vent injury to persons on the street. There was evidence that the bus was going 20 miles an hour, and that no warning of its approach was given. There was further evidence that Offutt came from the curbing; that he never stopped on the concrete platform, but went straight over it for the purpose of hailing the driver of the car, who had no right to drive in the safety zone; that the attention of the driver of the bus was directed to the offending car, and he did not see Offutt until he stepped on the platform. From this it may be inferred that a proper lookout was not kept, and that, if it had been kept, the driver of the bus, by the exercise of ordinary care, could have stopped his bus, or have warned Offutt in time to have avoided injuring him. We therefore rule that there was sufficient evidence of negligence not only to take the case to the jury, but to sustain the verdict.

But the point is made that a peremptory should have gone on the ground that Offutt was guilty of contributory negligence as a matter of law. The argument is that it was Offutt's duty to direct the traffic and to be on the lookout for approaching busses or cars to the end that he might protect the traveling public; that he stepped immediately in front of the bus without making any effort to learn of its approach; and that the case is analogous to that of a foreman or track walker or watchman, who is generally denied a recovery. Wickham's Adm'r v. Louisville & N. R. Co., 135 Ky. 288, 122 S. W. 154, 48 L. R. A. (N. S.) 150; Coleman's Adm'x v. Pittsburg C., C. & St. L. R. Co., 139 Ky. 559, 63 S. W. 39, 23 Ky. Law Rep. 401; Cincinnati N. O. & T. P. R. Co. v. Swann's Adm'x, 160 Ky. 458, 169 S. W. 886, L. R. A. 1915C, 27. An examination of the cases will show that a recovery was denied on the ground that it was the duty of the injured employee to be on the lookout for passing trains, and for that reason he was not entitled to a lookout or warning of the train's approach, or to have the train operated at a reasonable rate of speed. But here the situation is altogether different. Offutt was not employed by the railway company to be on the lookout for an occasional bus or street car operated on a fixed schedule. On the contrary he was employed by the city to direct the traffic. He was at a place where busses and street cars and other motor vehicles were constantly going and coming. In the very nature of things he could not direct the traffic and look after the traveling public, without having his

attention distracted from approaching busses, street cars, or other vehicles, and for this reason the driver of the bus owed him the same warning, the same lookout, and the same speed that he owed to any one else at the place of the accident. Where that is the case the person injured may act on the assumption that such duties will be performed, and a failure to look is not contributory negligence as a matter of law, but the question of contributory negligence is for the jury. Cincinnati N. O. & T. P. R. Co. v. Winningham's Adm'r, 156 Ky. 434, 161 S. W. 506; Chesapeake & O. R. Co. v. Williams' Adm'r, 179 Ky. 333, 200 S. W. 451; Chesapeake & O. R. Co. v. Hobson's Adm'r, 244 Ky. 162, 50 S. W. (2d) 560.

We find no error in the instructions.

Judgment affirmed.